# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 05-6038ND

_____

| | | |
|---|---|---|
| In re: Racing Services, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| PW Enterprises, Inc., | * | |
| | * | Appeal from the United States |
| Objector- Appellant, | * | Bankruptcy Court for the |
| | * | District of North Dakota |
| v. | * | |
| | * | |
| Kip M. Kaler, Bankruptcy Trustee | * | |
| For Racing Services, Inc., | * | |
| | * | |
| Movant - Appellee. | * | |

_____

Submitted: October 11, 2005
Filed: November 9, 2005

_____

Before KRESSEL, Chief Judge, FEDERMAN and MAHONEY, Bankruptcy
Judges.

_____

KRESSEL, Chief Judge.

This case has its origins in a forfeiture judgment against the debtor and Susan Bala, the debtor's chief executive and sole shareholder, for $99,013,200.00. The bankruptcy trustee, Kip Kaler entered into a stipulation with the United States, and made a motion to the bankruptcy court for approval of the stipulation. PW Enterprises timely objected to the trustee's motion. The bankruptcy court entered an order approving the trustee's motion without holding a hearing. The principle issue in this appeal is whether the bankruptcy court erred by granting the trustee's motion without holding a hearing and taking evidence. We conclude that it did and therefore we reverse and remand to the bankruptcy court.

## BACKGROUND

According to the trustee's motion to the bankruptcy court, on December 10, 2003 the debtor and its chief executive and sole shareholder, Susan Bala, were indicted for conspiracy on twelve counts of money laundering and conducting an illegal gambling operation.[1] On February 4, 2004 the debtor filed for relief under Chapter 11 of the Bankruptcy Code in Delaware. On February 12, 2004 the Delaware bankruptcy court issued an order granting the State of North Dakota's motion to transfer the case from Delaware to North Dakota.

On April 23, 2004 the North Dakota bankruptcy court granted a motion by the United States Trustee for appointment of a Chapter 11 trustee and the United States Trustee appointed a Chapter 11 trustee. On June 15, 2004 the bankruptcy court

---

[1] There was no hearing held in this proceeding. Both parties included in their memoranda facts which did not appear in the record before the bankruptcy court. We do not consider these facts. The trustee's appendix on appeal also included documents that were not part of the record before the bankruptcy court. We do not consider those documents. *Huelsman v. Civic Ctr. Corp.,* 873 F.2d 1171, 1175 (8th Cir. 1989) (Stating "[o]nly those papers and exhibits filed in the [trial] court can constitute the record on appeal.")

granted the Chapter 11 trustee's motion to convert the case to Chapter 7. On the same day, Kip Kaler was appointed Chapter 7 trustee.

The debtor and Bala were convicted, and the United States District Court for the District of North Dakota awarded to the United States a forfeiture judgment against the debtor and Bala for $99,013,200.00. On May 10, 2005 the trustee entered into a stipulation agreement with the United States. The motion states in pertinent part, "In order to avoid litigation regarding entitlement to these assets, these parties have agreed that the bankruptcy estate shall remain [sic] for distribution to creditors other than the United States by virtue of the forfeiture judgment, the assets the bankruptcy estate has been actively pursuing..." The trustee would keep certain property itemized in an attachment to the stipulation and the United States would get everything else. The attachment indicates that the trustee has received $482,403.45 of those assets. Nothing in the stipulation indicates the value of the assets the United States would receive.

On June 1, 2005, the trustee filed a motion in bankruptcy court for approval of the stipulation. PW, the debtor's largest unsecured creditor, filed an objection to the trustee's motion on June 16, 2005. The trustee filed a response to PW's objection on June 24, 2005. At some point between the time the trustee filed the motion and the date the bankruptcy court issued its order, PW's attorney spoke with the bankruptcy court clerk's office. During that conversation, the clerk indicated that PW should talk with the trustee and determine a mutually agreeable time to have a hearing and one would be scheduled. On July 13, 2005 the bankruptcy court approved the settlement without holding a hearing. The order was brief and said that the bankruptcy court had "read and considered the arguments against approval and regards them [to be] without merit."

PW appealed the bankruptcy court's July 13, 2005 order. The bankruptcy court denied PW's motion for a stay pending appeal, but we granted a stay on August 15, 2005.

## STANDARD OF REVIEW

We review the bankruptcy court's order approving a compromise or settlement for an abuse of discretion. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). An abuse of discretion occurs if the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Interpretation of rules presents a question of law that is subject to de novo review. *Indiana Lumbermen's Mut. Ins. Co. v. Timberland Pallet and Lumber Co., Inc.,* 195 F.3d 368, 374 (8th Cir. 1999).

## DISCUSSION

### THE RIGHT TO A HEARING

PW argues that it had a right to a hearing because it timely requested one when it objected to the trustee's June 1, 2005 motion. The court's local rules indicate that a hearing will be scheduled if objections are filed to a motion. See, e.g. Bankr. D. N.D. 2002-1, 2002-2, 4001-1, 4003-1. The trustee argues that the bankruptcy court's General Order of May 14, 2004 regarding scheduling of hearings indicates that a hearing will be scheduled on a motion only if the opposing party specifically requests one. The general order states:

> Hearings will be scheduled by the clerk's office for the following matters:
> 1) Confirmation of Chapter 11, 12, or 13 Plan...
> 2) Objection to Claim(s); and
> 3) Valuation hearings (Motion to be filed only after appraisals complete and agreement can not be accomplished)

Hearings for other matters will be scheduled <u>as needed</u> following the deadline for objecting or otherwise responding to a motion or request for relief." (emphasis added)

We are not satisfied that the General Order says what the trustee claims. However, to the extent that it can be read to mean that an objection to a motion is not sufficient to request a hearing or that this has become the accepted interpretation of the General Order, it cannot be applied here to prejudice PW's right to a hearing. Fed. R. Bankr. P. 9029 allows a judge to regulate practice:

> [I]n any manner consistent with federal law, these rules, Official Forms, and local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, Official Forms or the local rules of the district <u>unless</u> the alleged violator has been furnished in the particular case with actual notice of the requirement. Fed R. Bankr. P. 9029(b)(emphasis added).

Nothing indicates that PW received notice of the General Order.

Rule 9019 states that "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The term 'notice and a hearing' is defined in 11 U.S.C. § 102(1):

> (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but (B) authorizes an act without an actual hearing if such notice is given properly and if (I) such a hearing is not requested timely by a party in interest...

PW argues that it did timely request a hearing when it objected and was led to believe that a hearing would be scheduled by the bankruptcy court clerk's office.

When PW objected to the trustee's motion to approve the stipulation the matter became a contested matter under Rule 9014. In a contested matter "relief shall be requested by motion and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." Fed. R. Bankr. P. 9014(a). Once a contested matter is initiated by the movant, numerous other rules apply to the matter pursuant to Rule 9014(c). Those rules that apply include 7026, and 7027 which give the parties the opportunity to engage in discovery.

Lastly, the initiation of a contested matter triggers Rule 7052 which incorporates Fed. R. Civ. P. 52. Rule 52 requires the court to make findings of fact in all matters tried upon the facts without a jury. The rule states in pertinent part "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon..." Fed. R. Civ. P. 52(a).

The bankruptcy court made no findings of fact or conclusions of law in this contested matter. One of the purposes of Rule 52 is to facilitate appellate review. *Fogarty v. Piper*, 767 F.2d 513 (8th Cir. 1985). Generally a failure to make these findings necessitates a remand. *Id.*

## APPROVAL OF THE STIPULATION

The trustee entered into a stipulation with the United States. The bankruptcy court may approve a settlement on a motion by the trustee after notice and a hearing pursuant to Fed. R. Bankr. P. 9019(a).

A decision to approve or disapprove a settlement under Rule 9019 is within the discretion of the bankruptcy judge. *Drexel, Burnham, Lambert, Inc. v. Flight Transp. Corp. (In re Flight Trans. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984). In exercising its discretion under Rule 9019, the bankruptcy court must consider four factors bearing on the settlement's reasonableness. It must consider:

(1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.
*In re Flight Trans. Corp. Sec. Litig.* 730 F.2d at 1135 citing *Drexel v. Loomis*, 35 F.2d 800, 806 (8th Cir. 1929).

When considering reasonableness, there is no best compromise, only a range of reasonable compromises. So as long as the one before the court falls within that range, it may be approved. *Nangle v. Surratt-States (In re Nangle),* 288 B.R. 213, 220 (B.A.P. 8th Cir. 2003). (Stating that compromise is an art, not a science). An abuse of discretion occurs when a bankruptcy court does not weigh these factors and then approves or rejects the proposed settlement. *ReGen Capital III, Inc. v. Official Comm. of Unsecured Creditors (In re Trism, Inc.)*, 282 B.R. 662 at 667 (B.A.P. 8th Cir. 2002).

In its July 13, 2005 order, the bankruptcy court stated that the United States was able to obtain a forfeiture of all of the assets in the estate despite the bankruptcy case. The bankruptcy court did not make any findings of fact, nor did it otherwise articulate a legal basis for its order. The court stated that PW's argument against approval of the settlement was without merit and that approval was in the best interests of the bankruptcy estate. The bankruptcy court did not have any evidence from which it could determine reasonableness under the four criteria set out in *In re Flight Transportation.*

## CONCLUSION

We conclude that the bankruptcy court abused its discretion when it approved the stipulation between the trustee and the United States without holding a hearing.

We reverse the bankruptcy court's order and remand this case for proceedings not inconsistent with this opinion.


FEDERMAN, Bankruptcy Judge, with whom MAHONEY, Bankruptcy Judge, joins, Concurring

I agree with the opinion issued here. I write separately only to emphasize the role that PW Enterprises should play if it wishes to have the trustee litigate, rather than settle, his dispute with the government. The underlying issue that the trustee is attempting to settle concerns whether the debtor retains an ownership interest in property which the government claims was forfeited pre-bankruptcy.[2] PW contends that notwithstanding any forfeiture, the debtor did hold an interest in such property as of the date of bankruptcy, so the proceeds of such property should be distributed to all creditors pursuant to the provisions of the Bankruptcy Code.[3] No other creditor objected to the settlement. To the extent PW's position is correct, there would be assets of the estate to distribute pursuant to the Bankruptcy Code, including payment of the trustee's fees and expenses. But if PW is not correct all such assets could be deemed forfeited to the government, leaving nothing with which to pay such fees and expenses.

The unsettled nature of the law (i.e., the likelihood of success on the merits) is certainly one factor the Court must take into account in determining whether the settlement should be approved. In addition, however, the bankruptcy court is obligated to consider the expense of litigation, and whether there is any assurance of funds to pay such expense.

---

[2] 21 U.S.C. § 853(p).

[3] 11 U.S.C. § 726.

Section 364(b) of the Bankruptcy Code would allow the court to approve a loan to the trustee from PW for payment of the expenses incurred by him in continuing to litigate with the government. Such loan could be structured to be repaid from proceeds available to the estate if PW's position turns out to be the correct one. In addition, Section 327(e) enables the bankruptcy court to authorize the trustee to retain special counsel, which might be PW's counsel, to litigate the forfeiture issue with the government. The litigation which PW, and PW alone among the estate's creditors, wants the trustee to undertake is complex, and, given the unsettled nature of the law, might well not be resolved without extensive appellate review. In determining whether to approve the settlement, the bankruptcy court should consider the willingness of PW to finance such litigation, with appropriate provisions to repay PW if its position turns out to be correct. But if PW turns out to be wrong, it should be PW, and not the trustee himself, that bears the risk.

———————————————