# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6013

_____

In re:                                                *
                                                      *
In re: Petters Company, Inc.; Petters                 *
Group Worldwide, LLC; PC Funding,                     *
LLC; Thousand Lakes, LLC; SPF                         *
Funding, LLC; PL Ltd, Inc.; Edge One                  *
LLC; MGC Finance, Inc.; PAC                           *
Funding, LLC; Palm Beach Finance                      *
Holdings, Inc.,                                       *
                                                      *
        Debtors.                                      *
                                                      *       Appeal from the United States
Interlachen Harriet Investments Ltd.,                 *       Bankruptcy Court for the
                                                      *       District of Minnesota
        Objector - Appellant,                         *
                                                      *
v.                                                    *
                                                      *
Douglas Arthur Kelley, as Chapter 11                  *
Trustee for Petters Company, Inc.,                    *
Petters Group Worldwide, LLC, and                     *
PAC Funding, LLC and as Court                         *
Appointed Receiver for Thomas Petters,                *
Inc. and Petters Aircraft Leasing, LLC;               *
John R. Stoebner, as Chapter 7 trustee                *
of the Jointly Administered Bankruptcy                *
Cases Captioned In re: Polaroid Corp.,                *
et al., Case No. 08-46617; Petters                    *
Aviation, LLC; Elite Landings, LLC;                   *
Asset Based Resource Group, LLC,                      *
                                                      *
        Movants - Appellees.                          *

_____

Submitted: July 27, 2011
Filed: August 19, 2011
_____

Before SCHERMER, VENTERS, and NAIL, Bankruptcy Judges.
_____

VENTERS, Bankruptcy Judge.

Interlachen Harriet Investments Ltd., appeals the bankruptcy court's approval of a multi-million dollar, global settlement ("Settlement") in one of the largest Ponzi scheme bankruptcies in American history.[1]  The Settlement has been substantially consummated, and the appeal has been rendered largely moot.  Nevertheless, to the extent relief could be fashioned at this juncture, no such relief is warranted.  The bankruptcy court properly exercised its discretion to approve the settlement.  Therefore, we affirm the order of the bankruptcy court approving the Settlement.[2]

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b).

## I.  STANDARD OF REVIEW

A bankruptcy court's approval of a settlement agreement may be set aside only for an abuse of discretion.[3]  An abuse of discretion occurs if the court bases its ruling

---

[1] At the time the Petters Company, Inc., case was filed it was the largest; it has since been eclipsed by the Bernard Madoff investment case currently pending in the Bankruptcy Court for the Southern District of New York.

[2] The Honorable Gregory F. Kishel, United States Bankruptcy Court for the District of Minnesota.

[3] *See Tri-State Financial, LLC v. Lovald,* 525 F.3d 649, 654 (8th Cir. 2008) (quoting *In re Martin,* 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997).

2

on an erroneous view of the law or on a clearly erroneous assessment of the evidence.[4] It is not necessary that a settlement be the best result possible; a bankruptcy court need only determine "that the settlement does not fall below the lowest point in the range of reasonableness."[5] In sum, a bankruptcy court abuses its discretion to approve a settlement only if "no reasonable man could agree with the decision to approve [the] settlement."[6]

## II. BACKGROUND

The following facts have been gleaned from the pleadings. Notably, Interlachen has not disputed any of the facts set forth in the Appellees' pleadings; its dispute lies in the sufficiency, weight, and interpretation of those facts.

### A.      Context

As noted, this appeal arises out of the multi-billion-dollar Ponzi scheme perpetrated by Thomas Petters. Over many years, Petters used various wholly owned, special purpose entities, including Petters Company, Inc. ("PCI"), Petters Group Worldwide, LLC ("PGW"), and PAC Funding, LLC ("PAC Funding"), to carry out a fraudulent investment scheme. PCI obtained capital for the Petters enterprises on its own account and by using the special purpose entities to obtain billions of dollars of funding. Petters and his entities led investor-lenders to believe that their loans were being used to purchase electronics and other merchandise from wholesalers to be resold to "big box" retailers. The loans were purportedly secured by purchase orders.

---

[4] *See In re Racing Servs.*, 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

[5] *Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008).

[6] *Kenton Cty. Bondholders Comm. v. Delta Air Lines, Inc.*, (*In re Delta Airlines, Inc.*), 374 B.R. 516, 522 (S.D. N.Y. 2007) (quoting standard iterated in *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982)).

But the merchandise and inventory supposedly being bought with the investors' funds were nonexistent, and the purchase orders and related documents that were supposed to serve as security were fabricated. As in the prototypical Ponzi scheme, investors were not repaid with earnings from their investments, but instead with funds Petters obtained from other investors. In addition, Petters used investor funds to purchase the well-known Polaroid camera brand in 2005.

On or about September 24, 2008, the FBI and other federal agencies executed search warrants at multiple locations and seized records of Petters, PCI, PGW and other Petters entities. On October 3, 2008, Petters was arrested. He was charged with and found guilty of numerous federal criminal offenses and was sentenced to 50 years in prison.

## B. The Federal Receivership and the Bankruptcies

On October 2, 2008, the United States Government filed a complaint pursuant to 18 U.S.C. § 1345 and sought an asset freeze and receivership for the benefit of the victims of the Petters fraud. On October 6, 2008, Judge Ann D. Montgomery of the United States District Court for the District of Minnesota, in *United States v. Thomas Joseph Petters, et al.*, Civil Case No. 08-05248, appointed Douglas A. Kelley as the receiver for Petters, PCI and PGW, as well as entities 100% owned or controlled by them.

PCI, PGW, and PAC Funding were all receivership entities at one time. The receivership court specifically granted Kelley authority to file bankruptcy petitions for any of the receivership entities in order to protect and preserve their assets. In October 2008 Kelley filed Chapter 11 bankruptcy petitions for PCI, PGW, PAC Funding, and several other Petters entities.[7] These cases have been consolidated for

---

[7] PC Funding, LLC, Case No. 08-45326; Thousand Lakes, LLC, Case No. 08-45327; SPF Funding, LLC, Case No. 08-45328; PL Ltd., Inc., Case No. 08-45329; Edge One LLC, Case No. 08-45330, MGC Finance, Inc, Case No.

purposes of joint administration under *In re Petters Company, Inc., et al.*, Case No. 08-45257 (collectively, "PCI Bankruptcy Cases"), and Kelley was appointed as the trustee in all of these cases. An Official Committee of Unsecured Creditors ("PCI Creditors Committee") was also appointed and has been actively involved in the PCI Bankruptcy Cases. The PCI Bankruptcy Cases are pending before Judge Kishel of the United States Bankruptcy Court for the District of Minnesota.

Judge Kishel also presides over the related bankruptcy cases of PBE Corporation and PBE Consumer Electronics, LLC, formerly known as Polaroid Corporation and Polaroid Consumer Electronics, LLC. The Polaroid Bankruptcy Cases were commenced in December 2008 and operated as Chapter 11 debtors-in-possession. They were jointly administered under *In re Polaroid Corporation, et al.*, Case No. 08-46617, and in April 2009, substantially all of Polaroid's assets were sold pursuant to 11 U.S.C. § 363, generating approximately $87 million for the Polaroid Bankruptcy Estates.[8] The Polaroid Bankruptcy Cases were voluntarily converted to Chapter 7 on September 1, 2009. John R. Stoebner was appointed as the Chapter 7 trustee of the Polaroid Bankruptcy Estates.

Two other Petters entities relevant to this appeal are Petters Aviation, LLC and its wholly-owned subsidiary, Elite Landings, LLC. These entities were initially excluded from the Receivership, but they ultimately filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Judge Robert J. Kressel of the United States Bankruptcy Court for the District of Minnesota presides over these cases; they are captioned *In re Petters Aviation, LLC*, No. 08-45136 and *In re Elite Landings, LLC*, Case No. 08-45210 ("Aviation Bankruptcy Cases").

---

08-45331; and Palm Beach Finance Holdings, Inc., Case No. 08-45392. These debtors are not parties to the Settlement.

[8] *See In re Polaroid Corp.*, 611 F.3d 438 (8th Cir. 2010) (describing sale and rejecting challenge to it).

## C.    ABRG and Acorn

Appellee Asset Based Resource Group, LLC ("ABRG"), successor-servicer to Acorn Capital Group, LLC ("Acorn"), is one of the larger creditors in the Receivership and of the Petters Bankruptcy Estates. The settlement at issue in this appeal focuses in large part on resolving the many and complex disputes between ABRG and various Petters entities.

Beginning in the early 2000s, Acorn originated numerous loans to several Petters entities, including PCI, PAC Funding, Petters Aviation, and PAL. From 2001 to 2008, Acorn invested approximately $2.7 billion in various Petters entities. Measured by cash invested minus cash repaid to Acorn, Acorn lost approximately $138 million as a result of investments in PAC Funding and PCI.

Many of the loans Acorn made to the Petters entities were assigned directly or indirectly to various third parties, including Stewardship Credit Arbitrage Fund, LLC, Putnam Green LLC, ACG II, LLC ("Onshore Funds") and three Bermuda-based entities ("Offshore Funds"). After discovery of the Petters fraud, both the Onshore Funds and Offshore Funds began to wind up their respective affairs, and liquidation proceedings were commenced for the Offshore Funds in the Supreme Court of Bermuda, Commercial Court.

## D.    Acorn – Polaroid Litigation

Acorn has asserted claims of $290,500,725.10 against the Polaroid Bankruptcy Estates, allegedly secured by senior liens against substantially all of the Polaroid Bankruptcy Estates' assets, including accounts, inventory, and certain North American trademarks.

Acorn argued prior to the settlement that its secured claims arose out of certain loans made by Acorn to PAC Funding, an obligation of Polaroid to replenish a blocked account, and Polaroid's guaranty of all obligations owed by PAC Funding to

Acorn. Notably, Acorn's claims against the Polaroid Bankruptcy Estates compete against those asserted by Kelley on behalf of PCI and PGW and PAC Funding. Some of PCI's most valuable assets are: (1) the approximately $28 million in secured claims it has asserted against the Polaroid Bankruptcy Estates, (2) non-priority, general unsecured claims of approximately $11.4 million it has asserted against the Polaroid Bankruptcy Estates for various inter-company notes, and (3) the over-$180 million claim Petters Capital, LLC has asserted against the Polaroid Bankruptcy Estates. Asset (3) is valuable because PCI anticipates being the only material creditor of Petters Capital, holding in excess of 95% of the claims against the Petters Capital estate.

In February 2009 Polaroid commenced an adversary proceeding against Acorn, alleging that approximately $3.9 million in transfers made by Polaroid to Acorn were preferential and fraudulent transfers avoidable pursuant to Bankruptcy Code sections 544, 547, and 548 and Minn. Stat. § 513.41, *et seq.* ("Polaroid Adversary Proceeding"). The Polaroid Adversary Proceeding has been vigorously litigated, with both parties engaging in extensive discovery. As of the date of the hearing on the Settlement, the Polaroid Bankruptcy Estates had incurred more than $1 million in fees and expenses. Cross-motions for summary judgment were pending at the time the parties pursued (and ultimately consummated) settlement discussions.

**E.    PCI /PAC Funding – Acorn Litigation**

On October 10, 2010, Kelley also commenced an adversary proceeding against Acorn, alleging that over $2.7 billion of the transfers made by PCI, PGW, and PAC Funding to Acorn were preferential or fraudulent transfers avoidable under the Bankruptcy Code and Minnesota law ("Petters Adversary"). As of the date of the Settlement, the Petters Adversary had not progressed beyond the filing of the Complaint. The Complaint also seeks disallowance of Acorn's claims – exceeding $312 million – against PCI and PAC Funding.

**F.     Interlachen's Involvement with PCI.**

Appellant Interlachen was one of the last entities to invest in the Petters enterprises before the fraud was exposed. In April 2008 – at a time when PCI and other Petters entities were in default on numerous notes, were entering into numerous forbearance agreements, and the Ponzi scheme was collapsing – Interlachen entered into a short-term, high-interest loan with PCI and Petters for $60 million.  As of the petition date, $71,540,984 was due on the loan.  Interlachen was not repaid any principal and has asserted a claim of more than $60 million against the PCI Estate.

**G.     The Settlement.**

After extensive discovery and thorough briefing in the Polaroid Adversary Proceeding, Kelley, the Polaroid Trustee, Acorn, the Receiver, Petters Aviation and Elite negotiated a settlement over the course of several months. The Settlement has several key components, including:

1.     The Polaroid Trustee's payment of $11,500,000 to Acorn in settlement and release of all claims and liens asserted by Acorn against the Polaroid, Bankruptcy Estates, including alleged secured claims totaling $290,500,725;

2.     The Polaroid Trustee's payment of $3,000,000 on behalf of Acorn to PCI and PGW to resolve avoidance claims against Acorn, including an approximately $3.9 million preference claim;

3.     The reduction of Acorn's claims against PCI and PAC Funding from in excess of $312 million to a non-priority, unsecured claim in the amount of $141,290,116, representing Acorn's Ponzi scheme losses (money paid into the Ponzi scheme less money repaid);

4.     The Petters and Polaroid Trustees' separate release of Acorn, and Acorn's release of the Petters and Polaroid Trustees;

5.     Petters Aviation and Elite Landing's allowance of certain claims, including two Acorn claims, a non-priority unsecured PGW claim of

$647,225.62, and PCI's full non-priority, unsecured claim for $4,214,333.33.

The Settlement effectively resolves all disputes between Acorn and the other parties, thereby resolving numerous adversary proceedings pending in four different bankruptcy cases. In addition to the bankruptcy court's approval of the Settlement in the PCI Bankruptcy Case, the Settlement was contingent on: (1) the approval of the bankruptcy court (Kressel, J.) in the Polaroid Bankruptcy Cases; (2) the approval of the District Court in the Receivership Proceedings; (3) the bankruptcy court's confirmation of the Third Modified Joint Plan of Liquidation ("Aviation/Elite Plan") in the Aviation Bankruptcy Cases; and (4) approval by the Bermuda court presiding over the wind-up and liquidation of the Offshore Funds. Judge Kressel, the District Court, and the Bermuda court have all approved of the settlement. The Aviation/Elite Plan was confirmed on March 10, 2011, and became effective on March 25, 2011.

On January 18, 2011, Kelley filed a motion under Fed. R. Bankr. P. 9019 for approval of the Settlement. Interlachen was the only party to object. The Polaroid Trustee also filed a motion for approval of the Settlement in the Polaroid Bankruptcy Cases. On February 8, 2011, the bankruptcy court held a joint hearing on both Motions. After a lengthy hearing, the bankruptcy court orally approved the Settlement and explained its reasoning from the bench.

On February 9, 2011, the bankruptcy court entered an order approving the Settlement, citing its oral findings and conclusions. Interlachen timely appealed, and on March 14, 2011, Interlachen filed an Emergency Motion for a Stay with this Panel. We denied the Motion as procedurally and substantively deficient.

## H.    ABRG's Motion to Dimiss
On July 1, 2011, Appellee ABRG (Acorn's successor-servicer in interest) filed a motion to dismiss on the grounds that this appeal has been rendered moot

(constitutionally and equitably) by the performance of many aspects of the Settlement since it was approved by the bankruptcy court, including:

1.      Trustee Stoebner (of the Polaroid Bankruptcy Estates) has transferred $11,500,000 to Acorn;

2.      Trustee Kelley has transferred $2,376,900 to Acorn on behalf of Petters Aircraft Leasing, LLC;

3.      Stoebner has transferred $3 million to PAC Funding, of which $2,918,430 has been distributed to PCI and $81,570 has been distributed to PGW;

4.      The Aviation/Elite Plan has become effective.

5.      Payments from Petters Aviation to Class 11 convenience class claims and to Class 10 unsecured creditors have commenced.

6.      Petters Aviation has transferred $4,721,703.13 to Acorn.

7.      The following adversary proceedings pending in the United States Bankruptcy Court for the District of Minnesota have been dismissed with prejudice and closed pursuant to court-approved stipulations:

   a.      *Stoebner v. Acorn Capital Group*, Adversary Proceeding No. 09-04031;

   b.      *Petters Aviation, LLC v. Douglas A. Kelley, Receiver for Thomas J. Petters, individually, and for Thomas Petters, Inc.*, Adversary Proceeding No. 10-04327;

   c.      *Petters Aviation, LLC v. Acorn Capital Group, LLC and Asset Based Resource Group, LLC*, Adversary Proceeding No. 10-04333;

   d.      *Petters Aviation, LLC v. Douglas A. Kelley, Chapter 11 Trustee for Petters Group Worldwide, LLC*, Adversary Proceeding No. 10-04349;

   e.      *Petters Aviation, LLC v. Douglas A. Kelley, Chapter 11 Trustee for Petters Company, Inc.*, Adversary Proceeding No. 10-04350; and

f.  *Douglas A. Kelley v. Acorn Capital Group, LLC, et al.*, Adversary Proceeding No. 10-04441;

After receiving Interlachen's response, we entered an order on July 21, 2011, stating that we would take ABRG's motion with the merits of the appeal.

## III. DISCUSSION

### A.  ABRG's Motion to Dismiss is moot.

We first dispose of ABRG's motion to dismiss. While it has considerable merit,[9] the motion is moot in light of our ruling below that the bankruptcy court did not abuse its discretion in approving the Settlement. It will therefore be denied.

### B.  The bankruptcy court did not abuse its discretion in approving the Settlement.

Interlachen's numerous objections to the Settlement can be distilled into two categories: those that assign error to the sufficiency of the record underlying the bankruptcy court's conclusion that the Settlement is reasonable, and those directed at the substance of the bankruptcy court's determination that the Agreement is

---

[9] As noted above, the Settlement spans multiple estates and proceedings in four separate courts. Interlachen's appeal, if successful, would negatively impact numerous non-parties, including recipients of distributions from the Aviation/Elite Plan, recipients of distributions from the PAL estate, creditors and other parties in interest to the Polaroid estates, parties with an interest in the Bermuda liquidation, and all parties that received a release as part of the Settlement. Although it might be possible to undo some aspects of the Settlement, it would certainly be impractical and inequitable to undo them all. "[A]n appellate court may dismiss an appeal from a bankruptcy court as moot 'even though effective relief could conceivably be fashioned, [when] implementation of that relief would be inequitable.'" *In re Michaels*, 286 B.R. 684, 690 (B.A.P. 8th Cir. 2002)(quoting *In re Continental Airlines*, 91 F.3d 553, 559 (3rd Cir. 1996)).

11

reasonable. Although these are, in essence, two sides of the same analytical coin, for clarity we discuss each separately.

### 1. The record upon which the bankruptcy court based its approval of the Settlement was sufficient.

Interlachen argues that the bankruptcy court erred in approving the settlement without sufficient evidence that it was in the best interests of the estate. We disagree.[10]

The sufficiency of a record underlying a decision to approve a settlement depends on the circumstances of each case. While an evidentiary hearing might be necessary in some cases, it isn't in others.[11] The critical inquiry on appeal is not the quantum of evidence adduced at a hearing on a settlement, but rather whether a bankruptcy court apprises itself "of all facts necessary for an intelligent and objective

---

[10] Interlachen's argument is also internally inconsistent. On one hand, Interlachen argues that the bankruptcy erred by approving the Settlement without conducting an evidentiary hearing on the reasonableness of the settlement. (Br. at 13). On the other hand, Interlachen states in a footnote that the purview of the bankruptcy court in evaluating the Settlement should have been limited to the record as it existed before the hearing. (Br. at 16 n.12). Interlachen's latter suggestion would render the hearing on a settlement a mere formality, which we decline to do.

[11] *Compare In re Y-Knot Const., Inc.*, 369 B.R. 405 (B.A.P. 8th Cir. 2007) (reversing approval of settlement where proponent of settlement did not offer any documentary or testimonial evidence in support of settlement), *with Depositer v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994) (holding that an evidentiary hearing is not required under Rule 9019 and rejecting challenge to sufficiency of the evidence).

opinion of the probabilities of ultimate success should the claim be litigated,"[12] In this case, the bankruptcy court did that.

In addition to Judge Kishel's extensive familiarity with the issues and dynamics of this highly complex case – a difficult-to-quantify yet significant factor[13] – the record upon which the bankruptcy court approved the Settlement included: a) the Settlement, describing in detail the parties' (primarily Acorn/ABRG's and the Trustee's) competing claims; b) the Trustee's verified motion, further detailing the positions of and relationships between the parties and the alleged benefits of the Settlement to the PCI estate; c) the statements of the attorneys for the Trustees, the PCI Creditors Committee, and ABRG, explaining in detail the background, reasoning, and benefits of the Settlement;[14] d) the lengthy dockets from the various Petters bankruptcy cases before Judge Kishel, which reflect the complexity and costliness, in time as well as

---

[12] *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968).

[13] The experience and knowledge of the bankruptcy court reviewing a settlement is specifically recognized by some courts as a factor in assessing a settlement. *See, e.g., In re Iridium Operating LLC* 478 F.3d 452, 462 (2nd Cir. 2007). *Cf., In re Zahn Farms*, 206 B.R. 643, 644-45 (B.A.P. 2d Cir. 1997) (noting importance of bankruptcy court's familiarity with a proceeding in determining the necessity of a stay pending appeal).

[14] Contrary to Interlachen's contention, these parties' statements were not limited to conclusory, self-serving statements. Our review of the lengthy transcript of the hearing revealed numerous references to facts (to which Interlachen did not object) supporting the Settlement, and pointed exchanges with the bankruptcy court clarifying aspects of the Settlement. Of particular note is the bankruptcy court's exchange with counsel for ABRG regarding the fact that the amount of ABRG's allowed unsecured claim under the Settlement was calculated by reference to an analysis undertaken by a (presumably) objective third party, Pricewaterhouse Coopers. (Tr. at 38-40). Additionally, as officers of the court, the statements of counsel – whose testimony would have been germane – are entitled to additional weight.

money, of matters involving ABRG; and e) the cross motions for summary judgment filed in the in the Acorn-Polaroid litigation, which Interlachen has acknowledged, is part of the record.[15]

It is also notable that Interlachen did not offer any evidence to demonstrate that the settlement was unreasonable.

The fact that the bankruptcy court's oral ruling did not segregate or specifically enumerate the evidence before it does not undermine its ultimate conclusion that the Settlement is in the best interest of the estate. Therefore we find that the record, taken as a whole, supports approval of the Settlement.

## 2.     The Settlement satisfies the *Flight Transportation / Drexel* Factors.

As noted above, to be approved, a settlement need not be perfect, it must merely "not fall below the lowest point in the range of reasonableness." The reasonableness of a settlement is determined by reference to what are known as the *Flight Transportation* or *Drexel* (or *Drexel Loomis*) factors. Although these refer to different cases,[16] the factors are the same; *Flight Transportation* simply quotes *Drexel*.[17] Under *Flight Transportation*, a bankruptcy court evaluating a proposed settlement must consider "all of the factors bearing on the fairness of the settlement

---

[15] Brief of Appellant at 5 n.6. The motions and the over 1000 pages of exhibits attached thereto provide a basis on which the bankruptcy court could evaluate the potential further cost of the litigation and the respective merits of the parties' positions.

[16] *Drexel Burnham Lambert Corp. v. Flight Transp. Corp.* (*In re Flight Transp. Sec. Litigation*), 730 F.2d 1128 (8th Cir. 1984) (*Flight Transportation*); *Drexel v. Loomis*, 35 F.2d 800 (8th Cir 1929)).

[17] *Flight Transportation*, 730 F.2d at 1135 (quoting *Loomis*, 35 F.2d at 806).

14

including: '(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.' "[18] These findings are reviewed for clear error. And based on the record, the bankruptcy court's determination that these factors weigh in favor of approving the settlement was not clearly erroneous.

### a. Likelihood of Success

Interlachen maintains that the bankruptcy court erred in finding that the Trustee's likelihood of success in the Petters Adversary was low enough to justify the Settlement, but it offers little more than emphatic language to support its argument. In contrast, the bankruptcy court evaluated the relative strength of the parties' positions based on its familiarity with ABRG's defenses in the Polaroid–Acorn litigation, on an understanding of the unsettled nature of the law implicated by the adversary (see section c. below), and extensive input from the Trustee and PCI Creditors Committee. The bankruptcy court also properly considered the skill and tenacity ABRG had demonstrated in advancing its interests in the bankruptcy case and in other litigation with the Trustee. Based on all of theses factors, the bankruptcy court's determination that the Trustee's likelihood of success (or lack thereof) in the Petters Adversary warranted approval of the settlement.

### b. Difficulty of Collection

The Trustee, the PCI Creditors Committee and ABRG all represented to the bankruptcy court that ABRG's financial condition would make it difficult to collect any judgment that the Trustee might obtain against it. Interlachen has not disputed this assertion – in its brief or at oral argument. Rather, it sidesteps the issue by arguing that if the Trustee obtained a judgment against ABRG, the disallowance of Acorn/ABRG's

---

[18] *Id.*

claim against the PCI estate under 11 U.S.C. § 502(d) is tantamount to a recovery and therefore reduces the collection risk associated with the litigation.[19]

Although the operation of § 502(d) under these circumstances might provide the PCI estate with a benefit in the form of a reduction of the claims pool, that benefit is difficult to quantify without knowing the size of the estate and the size of the claims pool, whereas the value of a worthless judgment is quantifiable: It's zero minus the costs of litigation. Considered in conjunction with the complexity of the litigation and the immediate, concrete benefits that will inure to the PCI bankruptcy estate as a result of the settlement, we cannot say that the bankruptcy court committed clear error in not finding that § 502(d) offset the collection risk associate with the litigation.

### c.    Complexity of the Litigation

Interlachen largely glosses over this factor, arguing that the cost and complexity of the litigation "alone" does not support approval of the Settlement, and that § 502(d) offers a straightforward approach to the Petters Adversary. But, as discussed above, § 502(d) does not significantly strengthen the Trustee's hand against ABRG. And the complexity of the litigation is not the only factor supporting the bankruptcy court's approval of the settlement; all of the *Flight Transportation* factors weigh in favor of its approval. Nonetheless, the bankruptcy court did not err in finding that pursuing the Petters Adversary would be exceedingly complex and costly and that this complexity supports approval of the adversary.

Aside from the noted and obvious complexity of pursuing the recovery of $2.7 billion from an entity that had already demonstrated its tenacity in defending a roughly

---

[19] Section 502(d) provides in pertinent part: "[T]he court shall disallow any claim of any entity from which property is recoverable under section . . .550 . . . of this title or that is a transferee of a transfer avoidable under section . . . 547, 548 . . .of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title."  11 U.S.C. 502(d) (West 2010).

$3.9 million preference action against it, the uncertainty surrounding at least two issues in the Petters Adversary – the proper measure of fraudulent transfer avoidance and recovery in a Ponzi scheme and the fact-intensive inquiry necessary to determine a defendant's good faith – pose particular challenges to the litigation.[20] "The unsettled nature of the law… is certainly one factor the Court must take into account in determining whether the settlement should be approved."[21] And the bankruptcy court took due note of this factor.

### d. Paramount Interest of Creditors and Proper Deference to their Reasonable View in the Premises

Interlachen argues vehemently that the Settlement favors ABRG to the detriment of other creditors, but Interlachen wholly fails to address the significant and telling fact that, despite notice to over 100 creditors, Interlachen was the only creditor to object, and the PCI Creditors Committee endorsed the Settlement, noting at length at the hearing that it did so only after a thorough consideration and extensive analysis:

> When we initially heard about the terms of the proposed settlement, Your Honor, I would characterize our response as somewhat hostile, to be honest. We were resistant to the settlement and we had quite a lot of questions for the trustee and for Acorn and from that point on we commenced our due diligence process and we spoke to the trustee and counsel for the trustee. We spoke to counsel for Acorn. We obtained financial information relating to Acorn from Price Waterhouse and reviewed that financial information showing Acorn's investments that it made in to PCI and PAC Funding and also the payments that Acorn

---

[20] *See In re Bayou Group, LLC,* 439 B.R. 284 (S.D. N.Y. 2010) (discussing status of fraudulent transfer law as applied to the recovery of fraudulent transfers in Ponzi schemes). *See also* Clarence L. Pozza, Jr., *A Review of Recent Investor Issues in the Madoff, Stanford and Forte Ponzi Scheme Cases,* 10 J. Bus. & Sec. L. 113 (2010); Jeff Sonn, *Ponzie Schemes– Picking Up the Pieces from a Fallen House of Cards*, 755 PLI/Corp 443 (2009).

[21] *In re Racing Services, Inc.*, 332 B.R. 581, 584 (B.A.P. 8th Cir. 2005) (Federman, J. concurring).

received and the timing thereof. We reviewed the deposition transcripts and the pleadings related to the Acorn litigation and finally, Your Honor, we reviewed and commented on drafts of settlement documents.

As we investigated the settlement and learned more about it, our questions, many of them were answered and we came to believe that this settlement, and I will use the words of Mr. Lodoen (the Trustee's counsel), while we're not thrilled about this settlement, we believe that it is within the range of reasonableness, which is why we have not filed an objection.[22]

The bankruptcy court's approval of the Settlement gave proper deference to these views.

In sum, the bankruptcy court's finding that the Settlement satisfied the *Flight Transportation* factors is not clearly erroneous.

On a final note, we cannot ignore the fact that two other federal judges – Judge Montgomery of the United States District Court for the District of Minnesota and Judge Kressel of the Bankruptcy Court for the District of Minnesota – have placed their imprimatur on this settlement. Admittedly, the *Flight Transportation* factors do not take into account other courts' opinions of a settlement (which would be a non sequitur under normal circumstances), and these courts weren't evaluating the settlement from the perspective of the PCI bankruptcy estate. But they also weren't evaluating the Settlement from Acorn's or ABRG's perspective, which undermines Interlachen's contention that the Settlement is grossly biased in favor of Acorn and ABRG. These approvals of the Settlement make it extremely difficult, if not impossible, to conclude the Settlement fell below the lowest point in the range of reasonableness.

---

[22] Tr. at 45-46.

18

**CONCLUSION**

For the reasons stated above, the order of the bankruptcy court approving the Global Settlement is hereby affirmed.

———————————