**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 11a0606n.06**

**No. 09-1087**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

In re:    WILLIAM A. RANKIN;<br>
        SHIRLEY A. RANKIN,<br><br>
     Debtors<br><br>
_____<br><br>
WILLIAM A. RANKIN,<br>
SHIRLEY A. RANKIN,<br><br>
     Appellants,<br><br>
v.<br><br>
BRIAN LAVAN AND ASSOCIATES, P.C.;<br>
COMMONWEALTH LAND TITLE INSURANCE<br>
COMPANY, a foreign corporation; JOEL R. DAULT;<br>
PROGRESSIVE TITLE INSURANCE AGENCY<br>
COMPANY, a Michigan Corporation; PAUL WOOD,<br>
deceased; KARLA VOLKE-WOOD,<br><br>
     Appellees<br><br>
COLLENE K. CORCORAN,<br><br>
     Trustee – Appellee<br><br>
_____

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

</td></tr>
</table>

**Before: SUTTON and STRANCH, Circuit Judges; WELLS, District Judge.**[*]

_____

[*]The Honorable Lesley Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

No. 09-1087
*In re Rankin*

**WELLS, District Judge:** In their <u>pro se</u> petition, Appellants William and Shirley Rankin, husband and wife, seek to vacate the bankruptcy court's several decisions involving the Rankins' legal efforts to remedy perceived harms visited upon them in a residential real estate purchase gone awry. The Rankins, first, challenge the bankruptcy court's summary judgment of their multiple state-law claims against entities involved in the sale of the private residence, including defendants Joel Dault, Progressive Title Insurance Agency, Inc., and Commonwealth Land Title Insurance (hereinafter "the Title Defendants"). (Nos. 06-14084 & 06-14910). The Rankins also seek to unwind the bankruptcy court's decision to allow the Chapter 7 Trustee, defendant Collene Corcoran ("Trustee"), to compromise a claim arising from another state-court suit initiated by the Rankins against the owners of the residential property, defendants Paul Wood, deceased, and Karla Volka-Wood ("the Woods"). (No. 06-14179). Finally, the Rankins seek to avoid the bankruptcy court's award of sanctions against them for a series of filings directed at a number of entities, individuals and organizations. (No. 06-13726). The district court consolidated these four matters into a single bankruptcy appeal and affirmed.

For the reasons set forth below, we affirm the bankruptcy court's determinations as to the Trustee's compromise claim and the award of sanctions. We also affirm the dismissal of the Rankins' claims against the Title Defendants, but do so on jurisdictional grounds.

## I. BACKGROUND

These matters arise from the Rankins' failed efforts to purchase a private residence, located on Charring Cross Circle in Whitmore Lake, Michigan ("Charring Cross property"), in which they lived as vendees under a land contract with the Woods. In 1999, the Rankins fell behind on their

land contract payments and the Woods secured a judgment of possession against the Rankins requiring payment of arrears to reinstate the land contract. The Rankins failed to timely pay the arrearage and the Woods were awarded possession of the Charring Cross property.

The Rankins sought to retain possession of the home and negotiated with the Woods for an outright purchase. The Rankins maintain that an agreement was reached and they arranged for a mortgage. According to the testimony of Paul Wood, the agreed upon purchase price for the home was $285,000, plus payment of past due sums under the land contract.

Shortly after reaching the agreement, the Woods were notified by the Rankins' mortgage broker, Federal Mortgage, that the Rankins had arranged for financing in order to complete the purchase. On 1 February 2002, defendant Progressive Title received a request from Federal Mortgage to provide a mortgage title insurance commitment for a refinance transaction for the property. The title commitment was prepared solely for Federal Mortgage. Federal Mortgage directed Progressive Title to perform escrow closing services for the transaction, and issued closing instructions shortly thereafter. Progressive Title prepared the closing documents, including a land contract pay-off statement and settlement statement pursuant to the instructions it received from Federal Mortgage.

On 11 February 2002, the Rankins met to sign the necessary documents in order to complete the purchase of the home, including a settlement statement, and a disclaimer acknowledging that Progressive Title was hired to conduct the closing and issue title insurance to the lender and owed no obligation to the Rankins. Defendant Joel Dault represented Progressive Title at this meeting.

The next day, Federal Mortgage instructed Progressive Title to amend the settlement statement to add $10,000 to be paid to P.C. Law Center as a fee payable by the Rankins related to the closing. This change required the Rankins to come up with an additional $10,000 "out of pocket" to pay at closing.

On 13 February 2002, the Woods signed a Warranty Deed and delivered it to Progressive Title on the express condition that Progressive hold the deed in escrow until: (1) the written purchase and closing documents, including an agreed upon closing statement were fully executed, and (2) the full amounts due the Woods were available. After signing the deed, the Woods refused to sign the amended pay-off statement as it showed payment to them of less than the agreed upon amount.

On 14 February 2002, $286,000 was wired by the mortgagee to Progressive Title to hold in escrow for disbursement upon consummation of the transaction. On the same day, Federal Mortgage informed Mr. Wood that the Rankins did not have enough money to complete the transaction, and wished to lower the purchase price in order to be able to close the sale.

Later on 14 February 2002, Federal Mortgage offered the Woods a second mortgage on another piece of property owned by the Rankins to secure a deferred payment to the Woods of the closing shortfall. The Woods refused the offer. On 20 February 2002, the Woods confirmed with Progressive Title their intent not to close the sale of the house.

A series of legal filings followed. On 21 February 2002, the Rankins filed their Chapter 7 Bankruptcy Petition. On 4 January 2004, acting pro se, the Rankins filed a complaint in Oakland County Circuit Court against the Title Defendants. The complaint averred multiple claims, including

breach of fiduciary duty, "breach of closing," credit defamation, breach of contract and guaranty, fraud as to Joel Dault, "pierce the corporate veil," and mental distress.

The Trustee removed to the bankruptcy court the Rankins' suit against the Title Defendants. The Title Defendants moved for the dismissal of the case pursuant to FRCP 12(b)(6) and Bankruptcy Rule 7012, and for an award of summary judgment pursuant to FRCP 56(c) and Bankruptcy Rule 7056. The Rankins did not respond to either motion, nor did the Trustee. Instead, the Rankins filed an amended complaint, an answer to the Affidavit of Joel Dault that the Court construed as a response to the Title Defendants' motion for summary judgment, and a response to the Title Defendants' motion to dismiss relying on their answer to the Affidavit of Joel Dault.

The bankruptcy court treated the Rankins' amended complaint as properly filed for the purposes of its opinion. In addition, the bankruptcy court proceeded to determine the matter on the merits as presented. The bankruptcy court did so while noting that, because the events giving rise to the complaint occurred prior to the Bankruptcy filing on 21 February 2002, the proceedings became part of the bankruptcy estate property but were, instead, being pursued by the Rankins individually. The bankruptcy court, further, noted that the Trustee had removed the matter from state court but had taken little or no part in the proceedings following that action. Nevertheless, the Trustee had not formally abandoned the matter. The bankruptcy court awarded the Title Defendants summary judgment.

Again appearing pro se, the Rankins filed a state court action against the Woods to quiet title in the Charring Cross property and to recover damages. The Rankins did not disclose any interest in the Charring Cross property in their bankruptcy petition. Trustee Collene Corcoran learned of the

quiet title suit and agreed to accept the Woods' offer of $10,000 to settle the Rankins' claims. The Trustee filed a motion with the bankruptcy court seeking approval of this proposed settlement, which the bankruptcy court granted. However, the district court reversed the ruling on appeal and remanded for further proceedings because the record was silent as to some of the factors the bankruptcy court should have considered in determining whether to approve the Trustee's proposed settlement.

In response to the remand, the bankruptcy court held an evidentiary hearing. The order following the hearing granted the Trustee's motion to compromise the claims asserted in the Rankins' state court suit against the Woods for the sum of $10,000, as well as a corresponding opinion setting forth the grounds for the ruling. In finding that the Rankins were unlikely to prevail in their quiet title suit against the Woods, the bankruptcy court noted that the Court had contemporaneously granted summary judgment in favor of the Title Defendants and that, in certain material ways, that case was a trial on the merits of the Woods lawsuit as well. On appeal the Rankins challenge the decision to compromise their claim.

Finally, the bankruptcy court subjected the Rankins to sanctions as a result of their filings. On 15 March 2006, the bankruptcy court issued an Injunctive Order prohibiting the Rankins from causing any further filings in this matter without the Court's approval. The filings did not cease and, on 31 July 2006, after hearing oral argument and reviewing briefs in the matter, the bankruptcy court awarded sanctions against the Rankins, pursuant to FRCP 11, as adopted by Bankruptcy Rule 9011. The bankruptcy court found the Rankins jointly and severally liable for the following sanctions:

(a) Reasonable costs and attorney fees of $1,000 to the Woods.

(b) Reasonable costs and attorney fees of $1,000 to Robert Detwieler, former attorney to the Woods.

(c) Reasonable costs and fees in the amount of $2,000 to Commonwealth Land Title and Transaction Title.

(d) Reasonable costs and fees of $2,000 to Plunkett and Cooney, P.C.

(e) Reasonable costs and fees of $1,083.21 to Joel Dault and Progressive title.

(f) Reasonable costs and attorney fees of $2,226.00 to the Attorney Grievance Commission.

The Rankins appeal the bankruptcy court's sanctions ruling.

## II. LAW & ANALYSIS

### A. STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error, Kennedy v. Mustaine (In re Kennedy), 249 F.3d 576, 579 (6th Cir. 2001), and its conclusions of law de novo. WesBanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.), 106 F.3d 1255, 1259 (6th Cir. 1997).

### B. ANALYSIS

The Rankins challenge the bankruptcy court's decision to grant the Title Defendants' motion for summary judgment on the Rankins' state-law claims. The gravamen of their challenge is that the Title Defendants are subject to liability for their role in the Rankins' failed attempt to purchase the Woods' Charring Cross property. The bankruptcy court determined that the Rankins had failed, as a matter of law, to state any viable theory of recovery against the Title Defendants arising from the Rankins' effort to purchase the property.

### 1. Standing Against the Title Defendants

The Rankins must have standing to bring their state-law claims against the Title Defendants for injuries alleged as the result of the failed purchase of the Charring Cross property. That action accrued prior to the Rankins' filed bankruptcy petition on 21 February 2002.

The trustee in bankruptcy acts as representative of the estate. It is the trustee who "has capacity to sue and be sued." 11 U.S.C. § 323(b). "It is well settled that the right to pursue causes of action formerly belonging to the debtor – a form of property 'under the Bankruptcy Code' – vests in the trustee for the benefit of the estate." Bauer v. Commerce Union Bank, 859 F.2d 438, 441 (6th Cir. 1988), cert denied 489 U.S. 1079 (1989) (quoting Jefferson v. Miss. Gulf Coast YMCA, 73 B.R. 179, 181-82 (S.D. Miss. 1986)). The debtor has no standing to pursue such causes of action. In re Van Dresser Corp., 128 F.3d 945, 947 (6th Cir. 1997) (Debtor's appointed trustee has the exclusive right to assert the debtor's claim).

In this instance, the causes of action against the Title Defendants accrued in the early days of 2002, prior to the Rankins' bankruptcy filing. The Rankins' contingent interest is fully alienable under Ohio law and may be attached by creditors. Moore v. Foresman, 172 Ohio St. 559, 179 N.E. 2d 349, 353 (1962). As such, a contingent interest is an interest in property that becomes property of the estate under 11 U.S.C. § 541(a)(1) when a bankruptcy petition is filed. Thus, the Rankins' Trustee alone has the capacity to sue on the instant action involving the Title Defendants, as that suit is a putative asset of the estate. Under § 541(a)(1), the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case, and . . . the 'interests of the debtor in property' include 'causes of action.'" Bauer v. Commerce Union Bank,

859 F.2d at 440-41.  Under § 554, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate, but only after notice and a hearing.

The Rankins did not disclose any interest in the Charring Cross property in the schedule accompanying their bankruptcy petition, and did not disclose any potential claim against the Woods regarding the property.  For the Rankins to claim ownership standing through abandonment they must have formally scheduled the property.  See Stein v. United Artists Corp., 691 F.2d 885, 891 (9th Cir. 1982) ("When the bankrupt fails to list an asset, he [or she] cannot claim abandonment because the trustee has had no opportunity to pursue the claim.").

Prior to addressing the merits of the Rankins' claims against the Title Defendants, the bankruptcy court acknowledged that:

> on its face it would appear this proceeding is or was at the date of the bankruptcy case filing arguably a cause of action belonging to the debtors which became bankruptcy estate property.  It is however being pursued by the debtors individually. An argument can be made that the debtors have no standing and that it is a cause of action with respect to which only the trustee may pursue or abandon (in which case Debtors would not be able to pursue it) or otherwise deal with.  Aside from the removal the trustee has taken little or no part in these proceedings and does not appear to have formally abandoned it.  Given that for whatever reasons the standing issue appears not to have been raised or seriously pursued, the Court is proceeding to decide the matter on its presented merits.

(8 September 2006 Bankruptcy Opinion, p. 6 n. 3).

As a putative asset, the Rankins' suit against the Title Defendants was not part of their bankruptcy schedule and, therefore, remains part of the bankruptcy estate.  The trustee did not formally abandon the asset through notice and hearing and, as such, the Rankins do not have

standing to pursue the claims comprising the asset by right of ownership. Accordingly, the bankruptcy estate was the real party in interest at the time the Rankins filed their suit against the Title Defendants. Upon this premise, we affirm the bankruptcy court's disposition of the Rankins' claims against the Title Defendants, but do so on the basis of lack of subject-matter jurisdiction.[1]

## 2. No Error in Approving the Trustee's Compromise Claim.

The Rankins maintain the bankruptcy court erred in granting its approval of the Trustee's proposal to settle their quiet title suit against the Woods.

The bankruptcy court has significant discretion to approve such a proposed settlement by virtue of Bankruptcy Rule 9019(a), which directs that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." As enunciated in Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968), the bankruptcy court is under an affirmative duty to reach a "fair and equitable" settlement:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself [or herself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

Id. at 424–25.

---

[1]Alternatively, even if the Rankins had standing to bring suit against the Title Defendants, the bankruptcy court properly dismissed their claims under the decisions laid down in Koppers Co. v. Garling & Langlois, 594 F.2d 1094, 1098 (6th Cir. 1979), and Mickam v. Joseph Louis Palace Trust, 849 F. Supp. 516, 522 (E.D. Mich. 1994).

The bankruptcy court carried out the appropriate Rule 9019 inquiry, making an independent judgment on whether the Trustee's proposed compromise was fair and equitable. In its opinion on the matter, the bankruptcy court observed that the prospects for success in the Rankins' suit against the Woods were exceedingly slim, noting that the record did not show a meeting of the minds on the sale price of the Charring Cross property. Further, the record indicated the Rankins were unable to raise the funds to consummate the transaction at the agreed upon sale price. Further, the bankruptcy court determined from the record that, even if the Trustee could have prevailed on the claims against the Woods, the resulting benefit to the creditors – the real entities in interest – would have been minimal at best. The cost of litigating, the likelihood of appeal, the Rankins' litigious manner, the risk of having to immediately resell the property from the estate if the Trustee prevailed, considered together would not have produced the net gain to the bankruptcy estate offered by the Woods' $10,000 settlement offer.

On the record presented, the bankruptcy court's factual findings were not clearly erroneous and the court clearly met the legal standard that it be sufficiently apprised of the relevant facts and law to permit an informed judgment as to whether the Trustee's proposed compromise was fair and equitable.

### 3.     No Abuse of Discretion in the Award of Sanctions.

The Rankins challenge the decision of the bankruptcy court to award a total of $9,309.21 in sanctions to six entities for the Appellants' alleged violations of Federal Rule of Bankruptcy Procedure 9011.[2]

Bankruptcy court sanction awards are reviewed for an abuse of discretion. See Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 480 (6th Cir. 1996). To find for the Rankins in their effort to defeat the sanctions awarded requires us to conclude that the bankruptcy court relied upon clearly erroneous findings of fact, improperly applied the law, or used an erroneous legal standard. Id. We reach no such conclusion.

The bankruptcy court imposed sanctions of reasonable attorney fees and costs against the Rankins in an Order on 31 July 2006, pursuant to a sanctions hearing on 14 June 2006. The sanctions hearing was in response to the Rankins' filings with the bankruptcy court, against a number of entities. In particular, the bankruptcy court focused upon the Rankins' 9 January 2006 filing which called for a grand jury investigation of six named entities "To Charge Defendants and Others with Violation of Civil Rights Act and RICO," and charged illegality, criminal conspiracy, perjury, fraud, and racism.

Upon appeal to the Sixth Circuit, the Rankins repeat those allegations, without evidence and with a marked absence of coherence. Nothing in the Rankins' current filings reaches beyond the *ad hominem* conclusory allegations which initially gave rise to the bankruptcy court's initial imposition

---

[2]The court denies the Rankins' motion to expand the appeal citation to include those individuals and entities awarded sanctions but not appearing as parties in the underlying suit.

of sanctions. The Rankins' litigious behavior, further, caused the bankruptcy court to file an Injunctive Order Prohibiting Debtors from Filing any Further Pleadings on 15 March 2006. Finally, the Rankins offer no argument that the amounts of the sanctions awarded by the bankruptcy court were inappropriate under the standards set forth in Rule 9011(c)(2), which limits such awards to an amount "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."

From the record on appeal, the bankruptcy court's determination to award sanctions was not an abuse of discretion. Further, the amounts awarded are not beyond what appear to be sufficient to deter repetition of the Rankins' sanctionable filings.

### III. CONCLUSION

Upon review of the record, we dismiss the Rankins' claims against the Title Defendants for lack of standing. Further, we find the bankruptcy court exercised proper authority in reviewing the Trustee's decision to compromise the Rankins' suit against the Woods, and the bankruptcy court did not abuse its discretion in awarding sanctions against the Rankins. For the reasons set forth above, we AFFIRM the bankruptcy court's determinations regarding the Trustee and sanctions suits, and AFFIRM, on different grounds, the dismissal of the Rankins' suit against the Title Defendants.