**IN RE: Maria Ann PUGSLEY, Debtor(s).**

**Case No. 14–33454**

United States Bankruptcy Court, N.D. Ohio, Western Division.

Signed July 6, 2017

Erwin J. Bandy, Paulding, OH, for Debtor.

## MEMORANDUM OF OPINION AND ORDER APPROVING COMPROMISE

JUDGE JOHN P. GUSTAFSON

This matter came before the court on the Motion to Compromise [Doc. # 38]

filed by Trustee William L. Swope ("Trustee Swope"). A Hearing was held on the Motion on May 24, 2017. [Doc. # 64]. Attorney for Van Wert Savings Bank ("Bank") and the attorney for Creditor Imperial Funding IV, LLC ("Imperial") appeared by telephone. The Chapter 7 Trustee appeared at the Hearing in person. There was no appearance by or on behalf of the Debtor.

After the Hearing, the court allowed the parties to file any additional written arguments, of no more than three pages, that they wished to have the court consider. Only Imperial filed a Memorandum. [Doc. # 65].

The litigation the Trustee seeks to compromise is Adversary Case 16–03020, in which Trustee Swope brought an action against various companies over the rights to certain payment under a structured settlement agreement the Debtor had entered into in Texas in 1998. [Doc. # 39, p. 2]. In 2010, the Debtor conveyed a substantial portion of her interest in future payments to Imperial Funding IV, LLC (as assignee of Washington Square Financial LLC, d/b/a Imperial Structured Settlement). [Doc. 38–1, pp. 2 & 9]. The transfer of the Debtor's rights to receive two payments, a lump sum payment of $20,000 on September 19, 2013, and $55,000 from a lump sum payment of $81,879.22, which is to be paid on or about September 19, 2018 by the annuity that funds the structured settlement.

In the documents filed with her Chapter 7 Petition, the Debtor did not disclose her right to receive funds through the 2018 annuity payment. As a result of that non-disclosure, the Debtor's discharge was denied in Adversary Case 15–03028. [Case No. 15–03028, Doc. # 30].

The Bank knew of the annuity payments, and "informed the Trustee of the Debtor's right to receive payments under the Structured Settlement". [Doc. # 39, p. 3]. The Trustee filed litigation against various insurance and annuity companies, seeking to have the annuity payments paid into the Chapter 7 estate. The initial amount sought in the Complaint was $81,879.22, the full amount to be paid under the terms of the Structured Settlement on September 19, 2018. [Case No. 16–03020, Doc. # 1, p. 7; Doc. # 1, Pl. Ex. A, p. 11].

Adversary Case 16–03020 was resolved through a tentative settlement agreement, subject to bankruptcy court approval. The Trustee first sought approval of the settlement agreement in his Motion for Authority to Compromise filed on December 2, 2016. [Doc. # 38]. In the proposed Stipulated Judgment Entry Resolving Bankruptcy Trustee's Interest in Remaining Funds to be Paid Through Structured Settlement Agreement, the previous transfers made by the Debtor would be recognized, including the transfer of $55,000 of the $81,879.22 scheduled to be paid to the Debtor on September 19, 2018. [Doc. # 38–1, p. 2]. The remainder of the "2018 Lump Sum Payment", totaling $26,879.22, would be declared property of the Chapter 7 bankruptcy estate and paid to the Trustee for the benefit of creditors.

The Bank, which holds close to 49% of the general unsecured claims in the Maria Ann Pugsley Chapter 7 case, filed an Objection to the Motion to Compromise. [Doc. # 39]. The Bank's Objection makes several arguments, including: 1) that the Debtor had no right to transfer her interest in the annuity payments; 2) that the transfer of the $55,000 is not enforceable and/or void or voidable; 3) that the transfer did not comply with Ohio and/or Texas law in various respects; and 4) that the compromise was not in the best interest of the estate based upon the high probability of the

Trustee succeeding on the merits in litigation.

Several hearings on the Objections were continued as the parties discussed the issues, and Imperial requested leave to file a brief as an interested party. [Docs. ## 42, 43, 44, 48, 49, 50, 51 & 60]. On March 28, 2017, a Hearing was held on the Motion to Compromise. At that Hearing, this court provided the Bank with the option of making an offer to the Trustee to purchase the causes of action it was seeking to have the Trustee pursue. [Docs. ## 57, 58].

The Bank made an offer of $1,500 for the causes of action the Trustee may have against the various insurance/annuity companies and Imperial as the transferee of the interests of Maria Ann Pugsley's interests in the transferred annuity payments. At the May 24, 2017 Hearing on the Motion to Compromise, the Trustee asked the court to approve the settlement as originally proposed, rejecting the offer to sell litigation rights to the Bank for $1,500.

The parties were permitted to file an additional short brief, based upon the issues raised at the Hearing. The Trustee filed a Memorandum in Support. [Doc. # 65].

For the reasons that follow, the court will approve the Compromise proposed by the Trustee.

### LAW AND ANALYSIS

■ The initial burden of proof rests with the proponent of the compromise, who must demonstrate that the settlement is in the best interest of the estate. *Gen. Motors Acceptance Corp. v. Flynn (In re Midway Motor Sales, Inc.)*, 407 B.R. 442 (6th Cir. BAP 2009). Viewing the settlement from the perspective of the "estate", the court does not look at the potential benefit to the Bank if it were to succeed in the litigation as the purchaser of the causes of action. Rather, the benefits and detriments of the proposed compromise are viewed from the perspective of the estate, and the Bank as one of the estate's creditors—in fact, the largest creditor—is a future participant in the distribution from the proposed settlement.

■ As the Sixth Circuit has stated: The bankruptcy court has significant discretion to approve such a proposed settlement by virtue of Bankruptcy Rule 9019(a), which directs that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." As enunciated in *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed. 2d 1 (1968), the bankruptcy court is under an affirmative duty to reach a "fair and equitable" settlement:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself [or herself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

*Rankin v. Lavan (In re Rankin)*, 438 Fed. Appx. 420, 426 (6th Cir. 2011).

■ In conducting an evaluation of the proposed compromise, the bankruptcy

judge need not hold a "mini-trial", because an exact judicial determination would defeat the purpose of compromising the claim. *See, In re Junk,* 566 B.R. 897, 912 (Bankr. S.D. Ohio 2017).

■ Under the proposed terms of the settlement, the estate would receive $26,879.22 in 2018 under the terms of the Trustee's proposed settlement. The Trustee's proposed settlement will result in a substantial dividend to creditors, although less than full payment of all claims.

If the Bank's offer were accepted, the estate would receive an additional $1,500, but there would be corresponding risks in doing so, and some costs associated with approval of the sale of the cause of action. The court notes that the $1,500 represents less than an additional 6% to the "pot" available for distribution (less the Trustee's fee on that additional $1,500). This leaves a very thin margin for error—and is a substantial factor in the court's decision to approve the rejection of the Bank's offer to purchase the right to pursue an action against the 2010 transfer of the annuity payments.

First, it is not entirely clear how that sale would affect the Trustee's settlement and the 2018 distribution of the $26,879.22. While the Trustee would appear to be the logical party to receive the funds, the settlement makes that a binding requirement. The possibility that the distribution would be delayed, or that the funds could be frozen, or an interpleader action filed, is avoided. Even a delay in the distribution of funds may not be outweighed by an approximately 6% increase in the potential dividend.

Second, to the extent that the Trustee sells the litigation asset, and then gets pulled into the litigation—as a necessary party, or even as a witness, it would require very little legal work on the Trustee's behalf to run through the $1,500 payment in legal fees. Again, that may not be the most likely result, but it is a risk.

Looking at the Bank's objection to the Motion to Compromise more broadly, the arguments regarding the Trustee's likelihood of success appear to focus on possible failures to comply with the statutory requirements for transferring interests in structured settlements, particularly where there is language prohibiting such transfers. The Bank cites an Ohio case where the court declined to allow a transfer of a structured settlement payment based on the failure to comply with the statute. *In re J.G. Wentworth S.C.C.,* No. 484364, 2002 WL 33006575 (Ohio Prob. Ct. Jan. 14, 2002).

The problem here is that an Ohio court has already approved the transfer, and Judge Fortney issued an Order stating that all the requirements were met, and the transfer would be approved. [Doc. # 38–1, pp. 6–11]. No appeal was taken from that decision. Clearly, a collateral attack on the Ohio court's Order cannot be undertaken in this court based upon the *Rooker–Feldman* Doctrine. It is unclear how a state court-based attack on a seven year old unappealed order would fair much better.

Finally, in evaluating the Trustee's decision, the amount of the Bank's offer to purchase the right to proceed with the litigation is relevant. The litigation is not the potential amount of recovery reduced by the percentage of the chance of success. There is also the cost of getting to a decision—a cost that the estate would bear, to the detriment of the ultimate distribution to all unsecured creditors, if the Trustee did not succeed. If the Bank purchased the litigation for it's own benefit, it would bear the costs of litigation (as the estate would). It is hard to view the Trustee's decision to settle the matter as some

kind of gross error in judgment when the net valuation of the perceived error is only $1,500.

A trustee is not required to achieve an absolutely optimum result in every case. As many courts have noted, the court need only ensure that "the settlement does not fall below the lowest point in the range of reasonableness." *Ritchie Capital Mgmt., LLC v. Kelley*, 785 F.3d 273, 278 (8th Cir. 2015); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Junk*, 566 B.R. 897, 912 (Bankr. S.D. Ohio 2017); *In re Boddie*, 569 B.R. 297, 302–03, 2017 WL 2690275 at *3, 2017 Bankr. LEXIS 1656 at *7 (Bankr. S.D. Ohio May 24, 2017).

The court having canvassed the litigation and settlement issues, and finding the Trustee's proposed compromise to be reasonable, it is

**ORDERED** that the Trustee's Motion to Compromise [Doc. # 38] be, and is hereby, Granted, and the proposed Compromise Approved.