# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3271

_____

Ritchie Special Credit Investments, Ltd.; *
Rhone Holdings II. Ltd.; Yorkville    *
Investments I, LLC; Ritchie Capital    *
Structure Arbitrage Trading, Ltd.,    *
Ritchie Capital Management, L.L.C.,    *   Appeal from the United States
   *   District Court for the
Appellants,    *   District of Minnesota.
   *
v.    *
   *
United States Trustee; Official    *
Committee of Unsecured Creditors,    *
   *
Appellees.    *

_____

Submitted: June 17, 2010
Filed: September 2, 2010

_____

Before WOLLMAN, EBEL,[1] and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The United States Trustee appointed Douglas A. Kelley, Esq., as Chapter 11 trustee for the debtors in the jointly administered bankruptcy proceedings for certain companies established by Thomas J. Petters, including Petters Company, Inc. (PCI),

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

and Petters Group Worldwide, LLC (PGW). Ritchie[2] objected to the appointment, arguing that Kelley did not qualify as a "disinterested person" as required by 11 U.S.C. § 1104(d) and as defined by 11 U.S.C. § 101(14)(C) and that Kelley's appointment as the common trustee for the jointly administered estates would prejudice Ritchie. Ritchie also moved for expedited discovery, seeking to require Kelley to respond to discovery requests and to appear for a deposition.

The bankruptcy court[3] denied the discovery motion, overruled the objection, and approved Kelley's appointment as trustee for all debtors. See In re Petters Co., 401 B.R. 391 (Bankr. Minn. 2009) (overruling the objection and approving the appointment). The district court[4] affirmed the bankruptcy court's orders. Ritchie appeals, arguing that disabling conflicts of interest prevent Kelley from serving as an unbiased common trustee for the jointly administered estates and that the bankruptcy court abused its discretion in denying the discovery motion. We affirm.

## I. Background

Before his arrest and conviction, Petters owned PCI and PGW, both of which were privately held limited liability companies. PCI was the venture capital arm of the Petters enterprises that utilized single purpose entities to obtain billions of dollars

---

[2]Ritchie Special Credit Investments, Ltd., Rhone Holdings II. Ltd., Yorkville Investments I, LLC; Ritchie Capital Structure Arbitrage Trading, Ltd., Ritchie Capital Management, L.L.C. (collectively, Ritchie). According to Ritchie's brief, Ritchie Capital Management is the agent for the other Ritchie parties.

[3]The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

[4]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

of funding, purportedly to acquire merchandise for sale to wholesalers and retailers nationwide. PGW held investments in numerous companies, and its principal asset was its stock in Polaroid. As explained more fully below, PCI, PGW, and certain related companies have petitioned for Chapter 11 bankruptcy relief. Ritchie is an investment group that has filed more than $200 million in claims against PGW.

## A. Civil Action

In October 2008, the government commenced a civil action against Petters, several of his business associates, and his companies, PCI and PGW. The complaint alleged a massive Ponzi scheme that generated more than $3 billion in fraudulent proceeds. The government sought to freeze the defendants' assets under the authority of the Anti-Fraud Injunction Statute, 18 U.S.C. § 1354, thereby preserving the assets for victim restitution and potential forfeiture. The district court issued a temporary restraining order, essentially freezing the assets of PCI, PGW, and other related entities.

Thereafter, the district court approved a stipulated preliminary injunction that maintained the asset freeze over PCI, PGW, and the companies' subsidiaries, affiliates, and wholly owned or controlled entities. The assets were placed in receivership and Kelley was appointed to serve as the receiver. As receiver, Kelley serves as an agent of the district court and has been vested with the powers necessary to take immediate custody, control, and possession of the assets of the estates in receivership. United States v. Petters, No. 08-cv-05348 (D. Minn. Dec. 8, 2008) (order appointing receiver at 13-14) (Receiver Order).

The scope of the receivership and Kelley's duties and authority are set forth in the district court's order. See id. at 13-18. The order authorizes Kelley to file bankruptcy petitions "for any of the entities to protect and preserve the assets of any

of the entities" and requires that any bankruptcy cases be governed by the requirements of the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq*., and the Federal Rules of Bankruptcy Procedure. <u>Id.</u> at 15. The order further requires Kelley to "[c]oordinate with representatives of the United States Attorney's office and Court personnel as needed to ensure that any assets subject to the terms of this Order are available for criminal restitution, forfeiture, or other legal remedies in proceedings commenced by or on behalf of the United States." <u>Id.</u> at 16-17.

Ritchie moved to intervene, stating that an Illinois state court previously had appointed a receiver for PCI and PGW. Ritchie had filed suit in Illinois alleging that Petters, PCI, and PGW had defaulted on promissory notes held by Ritchie. The complaint alleged that Petters, PCI, and PGW had fraudulently induced Ritchie to sign purchase agreements and to extend the agreement's due dates by falsely representing that PCI was a successful, viable business and by failing to disclose that "PCI was involved in a 'Ponzi scheme' that used funds obtained from new investors to pay off prior creditors." Ritchie speculated that its funds were likely used to pay prior creditors in the Ponzi scheme and claimed damages exceeding $220 million. In early October 2006, shortly after it had appointed a receiver, the Illinois court determined that its orders freezing assets and appointing a receiver had expired and deferred to the judgments of the federal district court. The district court denied Ritchie's motion to intervene.

In March 2009, Ritchie filed a second motion to intervene, which was also denied. <u>See</u> <u>United States v. Petters</u>, No. 08-cv-05348 (D. Minn. Apr. 29, 2009) (order denying second motion to intervene). We affirmed the denial of that motion, and to date, Kelley remains the receiver in the civil case. <u>See</u> <u>United States v. Ritchie Special Credit Invs., Ltd.</u>, ___ F.3d. ___, 2010 WL ____ (8th Cir. Sept. 2, 2010).

-4-

### B. Criminal Case

In December 2008, a federal grand jury indicted Petters, PCI, and PGW on charges of mail fraud, wire fraud, money laundering, and conspiracy. A superseding indictment was issued in June 2009. Both indictments sought forfeiture of property involved or traceable to the offenses alleged in the indictment or, if that property is unavailable, the defendants' substitute property. Petters was convicted of the twenty charges against him and sentenced to fifty years' imprisonment.

### C. Bankruptcy Case

As receiver, Kelley filed Chapter 11 bankruptcy petitions for the debtors, and the bankruptcy court authorized joint administration of the bankruptcy cases.[5] The companies' management had resigned prior to the bankruptcy filings and Kelley served as the *de facto* debtor-in-possession. In December 2008, the U.S. Trustee and Ritchie brought motions for the appointment of Chapter 11 trustee or trustees. Ritchie sought appointment of a separate trustee for PGW. The bankruptcy court issued an order authorizing the U.S. Trustee to appoint one or more trustees. The U.S. Trustee selected Kelley to serve as the sole Chapter 11 trustee for the debtors in the jointly administered cases. Ritchie objected to the appointment, arguing that Kelley was disqualified from serving as trustee because of disabling conflicts of interest, and moved to compel discovery.

---

[5]Cases for the following debtors are being jointly administered: PCI; PGW; PC Funding, LLC; Thousand Lakes, LLC; SPF Funding, LLC; PL Ltd., Inc.; Edge One LLC; MGC Finance, Inc.; PAC Funding, LLC; Palm Beach Finance Holdings, Inc. Petters is the sole shareholder of PCI, PGW, and Palm Beach Finance Holdings; the remaining debtors are subsidiaries of PCI.

With its objection overruled, its discovery motion denied, and its appeal to the district court rejected, Ritchie appeals from the approval of the appointment of Kelley and the denial of the motion to compel.

## II.  Jurisdiction

Our jurisdiction to review matters from the district court in bankruptcy matters extends to "final decisions, judgments, orders, and decrees" entered by the district court under 28 U.S.C. § 158(a).  § 158(d)(1); see also  In re M&S Grading, Inc., 526 F.3d 363, 368 (8th Cir. 2008); Kubicik v. Apex Oil Co., 884 F.2d 343, 346 (8th Cir. 1989).  We apply a broader, more flexible concept of finality in bankruptcy cases than we do in nonbankruptcy cases.  In re M&S Grading, 526 F.3d at 368.  To determine the finality of a bankruptcy court order, we consider (1) the extent to which "the order leaves the bankruptcy court nothing to do but execute the order; (2) the extent to which delay in obtaining review would prevent the aggrieved party from obtaining effective relief; (3) the extent to which a later reversal on [the contested] issue would require recommencement of the entire proceeding." Id. (quoting In re Farmland Indus., Inc., 397 F.3d 647, 650 (8th Cir. 2005) (internal marks and citations omitted)).

We conclude that we have jurisdiction to review the district court's order affirming the bankruptcy court's decision to overrule the objection and approve the appointment of Kelley.  In doing so, we join the majority of our sister circuits that have considered the issue and concluded that an order appointing a bankruptcy trustee is final and thus reviewable.  See In re Marvel Entm't Group, Inc., 140 F.3d 463, 470-71 (3d Cir. 1998) (holding that district court's appointment of bankruptcy trustee is an immediately appealable final order); In re Cajun Elec. Power Coop., Inc., 69 F.3d 746, 748 (5th Cir. 1995) (same), *rev'd on other grounds*, 74 F.3d 599, 600 (5th Cir. 1996); In re Plaza de Diego Shopping Ctr., Inc., 911 F.2d 820, 826 (1st Cir. 1990) (same); Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 241 (4th Cir. 1987) (same).  But see In re Cash Currency Exch., Inc., 762 F.2d 542, 547-48

(7th Cir. 1985) (holding that the appeal from the bankruptcy court's appointment of trustee to the district court was interlocutory in nature and thus unreviewable by the Court of Appeals).

We find persuasive the reasoning of the Third Circuit in In re Marvel Entertainment Group:

> Using the liberal finality rules which apply in bankruptcy matters of this nature, we believe that jurisdiction is proper over the order appointing a trustee here. . . . Were we to put off hearing an appeal of the district court's order appointing a trustee until after the entire bankruptcy proceeding, allowing the possibility of an order returning this bankruptcy to its very beginning for a second round, the concept of judicial efficiency would be effectively turned on its head. . . . Were we not to take jurisdiction at this juncture, no meaningful review of the order appointing a trustee could ever take place, as a practical matter.

140 F.3d at 470. The Third Circuit remarked that it would "strain[] credulity to suggest that a reviewing court would jettison years of bankruptcy infighting, compromise and final determinations solely for the purpose of reversing" on the issue of the identity of the trustee. Id.

The bankruptcy court's order overruling Ritchie's objection and approving the appointment of Kelley as trustee left nothing more for the bankruptcy court to do but execute the order. Once the order was executed, Kelley had secured the powers granted to Chapter 11 trustees under the Bankruptcy Code. Although Ritchie can seek Kelley's removal for cause under 11 U.S.C. § 324, Ritchie would be unable to obtain the relief it seeks—the appointment of PGW's own trustee at the outset of the bankruptcy proceedings—in the absence of our immediate review. Moreover, later reversal of the bankruptcy court's order would require recommencement of the entire proceeding, beginning with the appointment of one or more trustees. Accordingly, we

hold that the bankruptcy court's approval of the appointment of a trustee is a final order and that we have jurisdiction to review the order.

## III. Analysis

"We sit as a second court of review in bankruptcy matters, generally applying the same standards of review as the district court and reviewing the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re M&S Grading, 526 F.3d at 367. The decisions to appoint a trustee and to deny expedited discovery are committed to the discretion of the bankruptcy court, and we will not reverse those decisions unless that court has abused its discretion. See In re Jones Truck Lines, Inc., 63 F.3d 685, 686 (8th Cir. 1995) (reviewing matters committed to the discretion of the bankruptcy court for abuse of discretion); see also In re National Warranty Ins. Risk Retention Group, 384 F.3d 959, 964 (8th Cir. 2004) (reviewing the bankruptcy court's denial of discovery motion for abuse of discretion); In re BH&P Inc., 949 F.2d 1300, 1313 (3d Cir. 1991) (reviewing the bankruptcy court's disqualification of a trustee for abuse of discretion). The bankruptcy court abuses its discretion when its decision relies upon a clearly erroneous finding of fact or fails to apply the proper legal standard. In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008); In re Farmland Indus., Inc., 397 F.3d at 651.

### A. Approval of Kelley's Appointment as Chapter 11 Trustee

#### 1. Kelley as Receiver and Trustee

Ritchie contends that Kelley cannot serve as both receiver and trustee. Ritchie argues that Kelley, as receiver, is predisposed towards forfeiture and that forfeiture would remove assets from PGW, thereby harming the company. According to Ritchie, Kelley thus has an interest materially adverse to PGW creditors and does not qualify as a disinterested person.

The Bankruptcy Code requires that the Chapter 11 trustee be a "disinterested person." 11 U.S.C. § 1104(d). As relevant to this case, "disinterested person" is defined as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." § 101(14)(C). Generally, the definition is construed to apply only to personal interests of the trustee, not those attributed to him in his representative or fiduciary capacity. See In re BH&P Inc., 949 F.2d at 1310 (Definition of disinterested "may be read to implicate only the personal interests of the trustee." (emphasis omitted)); In re O.P.M. Leasing Servs., Inc., 16 B.R. 932, 938 (Bankr. S.D.N.Y 1982) ("[I]t is 'personal interests' that are forbidden.") see also In re AFI Holding, Inc., 530 F.3d 832, 848 (9th Cir. 2008) (concluding that the definition of disinterested "was intended to disqualify only creditors with personal claims and those 'holding' prepetition adverse interests, not trustees having claims in a representative capacity"). Adverse interest has been defined to include the "possession of a predisposition under circumstances that create a bias against the estate." In re AFI Holding, 530 F.3d at 845.

The bankruptcy court refused to construe the receivership order as aligning Kelley with the U.S. Attorney's office or predisposing him towards forfeiture. As stated above, the district court's receivership order requires Kelley to "[c]oordinate with representatives of the United States Attorney's office and Court personnel as needed to ensure that any assets subject to the terms of this Order are available for criminal restitution, forfeiture, or other legal remedies." Receiver Order at 16-17. The bankruptcy court determined that the order required Kelley to fully disclose the assets and their locations, to keep the assets secure, and to maintain the assets' liquidity. In re Petters Co., 401 B.R. at 407. "This reflects the transparency that our legal system makes incumbent on any entrusted officer of a court, in the performance of obligations to the appointing court." Id. (emphasis omitted). The district court concluded that the bankruptcy court's interpretation of the order was correct and

determined that Kelley's dual roles as receiver and trustee did not give rise to a material adverse interest.

Likewise, we do not perceive Kelley's role as receiver as creating a material adverse interest. As an initial matter, Kelley does not have personal interests adverse to PGW. Even if the definition of disinterested were read to include representative as well as personal interests, we nonetheless conclude that Kelley qualifies as disinterested. Kelley's duties as a receiver did not "vest him with any interest aligned with the United States," nor does the order mandate any action on Kelley's part that would make him the "servant, agent, or ally" of the U.S. Attorney's office. Id. The bankruptcy court thus did not abuse its discretion in concluding that Kelley's role and interests as a receiver do not predispose him towards forfeiture or amount to a disqualifying material adverse interest.

## 2.  Kelley as Trustee for PCI and PGW

Ritchie argues that PCI and PGW have opposing interests and competing claims to the same assets such that Kelley cannot serve as a fiduciary to both companies. Ritchie contends that PGW owns legitimate companies, like Polaroid, whereas PCI and its subsidiaries engaged in the fraudulent diversion of funds and thus have little or no assets. According to Ritchie, PCI's most valuable asset is its claim against PGW. Ritchie maintains that these potential interdebtor claims and the threat of substantial conflict require the appointment of separate trustees.

The Federal Rules of Bankruptcy Procedure contemplate that a common trustee may be appointed for estates being jointly administered. Fed. R. Bankr. P. 2009(c)(2). Ordinarily the potentiality of a conflict of interest among the creditors of the jointly administered estates "is not sufficiently serious or frequent in most cases to warrant the selection of separate trustees." Id. advisory committee's note. Although we recognize that cases involving several debtors "served by a single trustee present

special concerns requiring the trustee to balance competing interests with vigilance and guard against conflicts, we also recognize the reality that a single trustee is often able to maximize the return to jointly administered estates through increased economy and efficiency." In re BH&P, 949 F.2d at 1310.

The bankruptcy rules do require that the court order the selection of separate trustees for estates being jointly administered on a showing that creditors or equity security holders of the different estates will be prejudiced by conflicts of interest of a common trustee. Rule 2009(d) "requires the court to make a preliminary evaluation of the risks of conflict of interest." Fed. R. Bankr. P. 2009 advisory committee's note. "[T]he predicate for application of Rule 2009(d) is not that a common trustee is 'disinterested' but that prejudice will occur as a result of the trustee's dual representation." In re BH&P, 949 F.2d at 1311 n.13.

To determine whether the appointment of a common trustee will prejudice the creditors of the different estates, the bankruptcy court must consider the facts and circumstances presented.

> This inquiry is of necessity case-specific. There must be at a minimum full and timely disclosure of the details of any given arrangement. Armed with knowledge of all of the relevant facts, the bankruptcy court must determine, case by case, whether a situation such as the presence of a single trustee in jointly administered cases where there are interdebtor claims can be tolerated under the particular circumstances. In doing so, the court should consider the full panoply of events and elements. The nature and extent of the conflict must be assayed, along with the likelihood that a potential conflict might turn into an actual one. An effort should be made to measure the influence the putative conflict may have in subsequent decisionmaking. Perceptions are important; how the matter likely appears to creditors and to other parties in legitimate interest should be taken into account.

Id. at 1312-13 (quoting In re Martin, 817 F.2d 175, 182 (1st Cir. 1987)) (internal alterations omitted).

We find no abuse of discretion in the bankruptcy court's determination that Ritchie failed to show that it would be prejudiced by Kelley's appointment as trustee in the jointly administered estates. The bankruptcy court correctly focused on the facts presented:

> [T]he characteristics of these cases and their backdrop cannot be ignored: multiple pending, major criminal prosecutions against key management personnel of the Debtors; the sheer magnitude of the sums of money in question; the present indeterminacy of what happened to build and then fell the edifice of Tom Petters's enterprise; the large complexities that must be coordinated to responsibly propel the bankruptcy procedures forward. These circumstances powerfully support the concentration of attention and effort into one fiduciary steward, at this time and for a while to come.

In re Petters Co., 401 B.R. at 412-13.

Particularly important in the bankruptcy court's analysis was the fact that the trustee had only begun to recover assets, assess liquidity, and determine encumbrances against those assets. Given the administrative nature of the trustee's work—which Kelley expected to last a year or more—and Ritchie's failure to identify to the bankruptcy court any prejudice in the trustee's completion of these tasks, the bankruptcy court did not abuse its discretion when it concluded that no disqualifying prejudice existed.

## B. Denial of Motion for Expedited Discovery

We find no abuse of discretion in the bankruptcy court's decision to deny Ritchie's motion for expedited discovery. The bankruptcy court reasonably

determined that the receivership order served as the basis for Kelley's duties as a receiver and the order allowed the bankruptcy court to assess whether those duties conflicted with his duties as trustee. Similarly, we see no reason to disturb the conclusion that any prejudice in appointing a common trustee can be measured by the publicly available documents.

## III. Conclusion

We note that this case is before us on appeal from the appointment, objection to the appointment, and subsequent approval of Kelley as a trustee under 11 U.S.C. § 1104(d) and the Federal Rules of Bankruptcy Procedure. Ritchie has not sought to remove Kelley for cause under 11 U.S.C. § 324. The bankruptcy court invited Ritchie to renew its conflict-of-interest claim after "a cash bearing estate has been assembled and at a time the investigation" proved that unripened conflicts have materialized. Id. at 413-14. Accordingly, the bankruptcy court left the matter neither to hindsight nor to "the unfettered desire of the parties involved." See In re BH&P, 949 F.2d at 1313 (quoting In re Martin, 817 F.2d at 182). Instead, it took the immediate opportunity to assess the alleged conflicts and recognized that it would revisit its preliminary determination that no disqualifying conflict of interest prevented Kelley from serving as the common trustee.

The judgment is affirmed.

COLLOTON, Circuit Judge, concurring in the judgment.

An administrative panel of this court previously denied the appellees' motion to dismiss the appeal for lack of jurisdiction, *see* Order (Nov. 9, 2009), and that decision "is the law of the case, ordinarily to be adhered to in the absence of clear error or manifest injustice." *McCuen v. Am. Cas. Co.*, 946 F.2d 1410, 1403 (8th Cir.

1991).  Seeing no "clear error or manifest injustice" in the assertion of jurisdiction, and agreeing with the court's analysis of the merits, I concur in the judgment.

_____