# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1034
_____

Edward M. Johnson; Pamela J. Johnson

*Appellant*s

v.

Daniel Johnson; Jan Johnson

*Appellee*s
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 21, 2013
Filed: October 29, 2013
[Unpublished]
_____

Before GRUENDER, BEAM, and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

After learning that debtors Edward and Pamela Johnson ("debtors") failed to report their interest in certain real property to the bankruptcy trustee, creditors Daniel and Jan Johnson ("creditors") initiated an adversary proceeding against the debtors

in bankruptcy court,[1] requesting that the debtors' previous bankruptcy discharge be revoked. The bankruptcy court determined that the debtors still held an interest in a home that they purportedly sold to Edward Johnson's parents and thus revoked the previous discharge pursuant to 11 U.S.C. § 727(d)(1). On appeal, the district court[2] affirmed the bankruptcy court's judgment. The debtors now appeal these adverse rulings.

## I. BACKGROUND

The Chapter 7 debtors in this case, Edward and Pamela Johnson, husband and wife, owned a real estate venture known as Johnson Built Homes, LLC, with Daniel and Jan Johnson, also husband and wife. Edward and Daniel are the sons of Miles and Patricia Johnson. To fund their business venture, the debtors and creditors obtained a loan from Park Midway Bank (the "Bank") in exchange for personal guarantees and mortgages on real property. Specifically, the creditors granted the Bank a mortgage on their lake home, and the debtors granted the Bank a mortgage on their homestead. The debtors also owned a lake home but this property was left unencumbered by the business loan.

Eventually, Johnson Built Homes experienced financial difficulties, and the debtors stopped paying their debt obligations toward the business. After the debtors stopped paying, the creditors attempted to shoulder the entire business debt, but after several months, they too stopped paying, and the loan went into default. Subsequently, the Bank sought to foreclose on the mortgaged properties but had failed to properly record the mortgage on the debtors' property. Thus, the Bank only

---

[1]The late Honorable Nancy C. Dreher, United States Bankruptcy Judge for the District of Minnesota.

[2]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

foreclosed on business property and the creditors' lake home. The Bank obtained a deficiency judgment of roughly $68,000 against the creditors. Meanwhile, the debtors' homestead and lake home went unaffected by the default and foreclosures.

As a result of the failed business venture, the creditors initiated action against the debtors in Minnesota state court. Soon after, on June 8, 2010, the debtors filed a petition for Chapter 7 bankruptcy, listing Daniel and Jan as creditors due to the state court action. On September 14, 2010, the bankruptcy court granted the debtors a discharge.

Two months before filing their petition for bankruptcy, the debtors attempted to convey real property located in Fairfield Township, Minnesota (the "lake property"), to parents Miles and Patricia Johnson. In exchange for the conveyance and a warranty deed, Miles and Patricia paid the debtors $56,000, which Miles procured from a home equity line of credit. None of the debtors' personal property transferred through the warranty deed, but the debtors' personal property remained on the lake property. After the transaction–which the debtors characterized as a sale of real property–the debtors continued to use and enjoy the property, even paying all utilities, property taxes, and making improvements to the property. The evidence at trial also revealed that the debtors agreed to pay back Miles and Patricia the $56,000 plus interest equal to that paid on the home equity line of credit, at which time Miles and Patricia would return legal title to the debtors.

After discharge, the creditors initiated an adversary proceeding against the debtors, alleging that the debtors engaged in fraud and failed to report to the bankruptcy trustee a continued equitable interest in the lake property. The bankruptcy court found that the debtors' purported sale of lake property to Miles and Patricia had several badges of fraud. Rather than deeming it a sale, the court concluded the transaction constituted a loan from Miles and Patricia, with the debtors maintaining an ownership interest in the property. Further, the bankruptcy court

found that the debtors engaged in the transaction with the intent to hinder, delay or defraud creditors. Based on these findings, the bankruptcy court revoked the debtors' discharge. The district court affirmed. The debtors now appeal. We affirm.

## II.    DISCUSSION

"We sit as a second court of review in bankruptcy matters, generally applying the same standards of review as the district court and reviewing the bankruptcy court's factual findings for clear error and its conclusions of law de novo." Ritchie Special Credit Inv., Ltd. v. United States Trustee, 620 F.3d 847, 853 (8th Cir. 2010). Like the district court, we must determine whether the bankruptcy court properly revoked the debtors' bankruptcy discharge under § 727(d)(1), finding that the debtors obtained discharge through fraud.

Under § 727(d)(1), if a creditor can show that a bankruptcy debtor obtained discharge through fraud and the creditor did not know of the fraud until after discharge, the court is required to revoke the bankruptcy discharge. A showing of fraud in the abstract is not sufficient, rather a creditor must establish "that the entire discharge would not have been granted but for debtor's fraud." In re Edmonds, 924 F.2d 176, 180 (10th Cir. 1991). Here, the bankruptcy court determined that had the debtors' fraud been known, they would have been denied discharge under § 727(a)(2)(A) and § 727(a)(4)(A). Section 727(a)(2)(A) disallows a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . . or concealed" the debtor's property within one year prior to the petition. Likewise, § 727(a)(4)(A) precludes a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

The debtors seem to argue that the bankruptcy court erred in finding that either a contract for deed or equitable mortgage existed because the same proof cannot be

-4-

used to establish both. Additionally, according to the debtors, the creditors failed to produce evidence of an equitable mortgage. We think the debtors ignore the actual language of the bankruptcy court's ruling, as a close reading of the ruling clearly outlines the court's findings with respect to the loan transaction and the debtors' equitable interest in the property. The bankruptcy court's passing reference to a contract for deed in its ruling does not somehow displace the substantive findings concerning an equitable mortgage. In sum, we conclude the bankruptcy court determined that a equitable mortgage existed and ample evidence supported that determination. See Fraser v. Fraser, 702 N.W.2d 283, 287-88 (Minn. Ct. App. 2005) ("An equitable mortgage is created when the parties to the transaction intended it to be essentially a security transaction." (quotation omitted). And, "intention is to be ascertained by the written memorials of the transaction and the attendant facts and circumstances." (quotation omitted)).

The debtors next contend that the bankruptcy court erred in allowing the creditors to advocate an equitable mortgage theory because the creditors never raised this theory prior to trial. The debtors complain that they did not have adequate notice to defend against an equitable mortgage claim. The debtors further contend that they did not have adequate notice that the creditors were going to support their equitable mortgage claim by showing that the debtors failed to disclose certain items of personal property located at the lake property. After carefully reviewing the creditors' adversary complaint in this case, we think the debtors had more than sufficient notice that the creditors may seek revocation premised on an equitable mortgage theory. To be sure, the complaint essentially described a transaction between the debtors and Edward's parents that had all the hallmarks of an equitable mortgage. See First Nat'l Bank of St. Paul v. Ramier, 311 N.W.2d 502, 503 (Minn. 1981) ("As a general rule, in equity, when the real nature of the transaction between the parties is that of a loan, advanced upon the security of realty granted to the party making the loan, it may be treated as an equitable mortgage, without regard to the actual form of the instrument of conveyance."). And, assuming the bankruptcy court erred in entertaining issues

related to the personal property located at the lake property–a very strained assumption–we find such an error harmless as the record is replete with evidence to establish the fraudulent nature of the transaction and to establish an equitable mortgage.

Finally, the debtors ask this court to reverse the bankruptcy court's finding that they fraudulently failed to list certain assets on their bankruptcy schedules because even if the debtors did not technically list such assets, they did not intend to commit fraud. As an alternative ground to revoke the debtors' discharge under § 727(d)(1), the bankruptcy court determined that the debtors' could have originally been denied a discharge pursuant to § 727(a)(4)(A) for fraudulently failing to disclose valuable assets. Although the sham lake property transaction alone would have been sufficient to revoke discharge, we see no clear error in the bankruptcy court's additional finding of fraud.

## III. CONCLUSION

We affirm.

_____