# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2482

_____

Ritchie Capital Management, L.L.C.; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investments I, LLC; Ritchie Capital Structure Arbitrage Trading, Ltd.

*Appellant*s

v.

Douglas A. Kelley, in his capacity as the Chapter 11 Trustee of Petters Company, Inc.; VICIS Capital Master Fund, Ltd.; Official Committee of Unsecured Creditors

*Appellee*s

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 12, 2015
Filed: May 4, 2015

_____

Before BYE, BEAM, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Ritchie Capital Management, L.L.C., and other appellants (collectively, Ritchie) objected to an allocation of proceeds derived from a settlement between Douglas A. Kelley, in his capacity as Chapter 11 bankruptcy trustee of Petters

Company, Inc. (PCI), and VICIS Capital Master Fund, Ltd. (VICIS). The bankruptcy court[1] overruled the objection and approved the settlement and the allocation of proceeds. Ritchie appealed, and the district court[2] affirmed. Ritchie again appeals, alleging the bankruptcy court abused its discretion by approving the allocation. We affirm.

I

Prior to his downfall in September 2008, Thomas Petters orchestrated a $3.65 billion Ponzi scheme. This Court has described in several of its opinions the specifics of Petters's scheme and the numerous resulting civil disputes. See, e.g., United States v. Petters, 663 F.3d 375, 379-80 (8th Cir. 2011); Ritchie Capital Mgmt., L.L.C. v. Jeffries, 653 F.3d 755, 758-60 (8th Cir. 2011); Ritchie Special Credit Invs., Ltd. v. U.S. Trustee, 620 F.3d 847, 850-51 (8th Cir. 2010). We recite only those facts most relevant to the instant appeal.

Petters, in facilitating his scheme, purportedly operated a "diverting" business primarily through PCI which purchased electronics in bulk and then resold them at high profits to major retailers. The business, however, was a sham, and the only influx of money came from loans or investments. Between February 1, 2008, and May 9, 2008, Ritchie invested in Petters's scheme, advancing approximately $189 million to PCI. In exchange for the funds, Ritchie received promissory notes. Ritchie assigned two of its promissory notes to VICIS on February 19, 2008, with face values totaling $25 million.

---

[1]The Honorable Gregory F. Kischel, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

Beginning on June 13, 2008, through September 2008, PCI and Petters made a series of nineteen payments of not less than $23,785,508 to Ritchie. Eighteen of the payments originated from PCI, and Petters made the nineteenth payment by withdrawing funds from his personal checking account. Ritchie used a portion of the funds it received from PCI and Petters to pay VICIS $17,703,227.39 based upon the assigned promissory notes. Of the amount received by VICIS, approximately 15% ($2,701,200) originated from Petters's payment and approximately 85% ($15,002,027.39) originated from PCI.

After Petters's scheme ended in September 2008, a receivership was created for Petters; PCI; Petters Group Worldwide, LLC (PGW); and other related entities. Kelley was appointed as the receiver and thereafter petitioned for relief under Chapter 11 of the United States Bankruptcy Code on behalf of PCI and PGW in accordance with the authority granted to him pursuant to the receivership order. The bankruptcy court appointed Kelley as the Chapter 11 trustee for PCI and PGW in February 2009.[3]

Due to the extent and impact of the fallout from Petters's scheme, the United States, Kelley in his positions as the trustee and the receiver, and the bankruptcy trustee for Polaroid Corporation, one of Petters's wholly-owned companies, entered into a coordination agreement "to maximize recovery to victims and creditors and minimize receivership and bankruptcy expenses . . . ." The coordination agreement recognized there is a "significant overlap of identity" between the victims of the fraud and the creditors of the bankruptcy estates and "competing litigation would result in

---

[3]Ritchie previously filed an objection to Kelley's dual appointments as the trustee and the receiver based on a conflict of interest. The bankruptcy court overruled Ritchie's objection, finding no disabling conflict of interest which precluded Kelley from operating as both. We affirmed the bankruptcy court in Ritchie Special Credit Investments, Ltd. v. U.S. Trustee, 620 F.3d 847, 856 (8th Cir. 2010).

the overall diminishment of the recovery for victims and creditors alike and undue delay in the distribution of assets[.]"

On October 10, 2010, Kelley, as the trustee, commenced an adversary proceeding against Ritchie, VICIS, and other defendants, seeking to recover alleged fraudulent and preferential transfers under bankruptcy and state law. VICIS and Ritchie opposed the complaint. Kelley, as the receiver, also alleged the transfer by Petters was fraudulent and therefore recoverable, but he had yet to commence an action on this particular claim. Conversely, VICIS held a claim against PCI's bankruptcy estate to recover the amount which remained outstanding on the promissory notes.

After the filing of the adversary proceeding, Kelley met with VICIS to discuss a resolution of the claims. Kelley and VICIS, along with representation for the unsecured creditors's committee appointed in PCI's bankruptcy case, mediated the dispute and reached a settlement. Pursuant to the settlement agreement, VICIS paid $7.5 million to Kelley in return for a global release of all claims held by and against it by either the receivership or the bankruptcy estate. The settlement agreement was contingent on approval by both the district court overseeing the receivership and the bankruptcy court.

Kelley filed a verified motion to approve the settlement agreement with the bankruptcy court on February 6, 2014. The motion indicated the settlement agreement, among other things, resolved the disputes between Kelley, as the trustee and the receiver, and VICIS. The motion further included an allocation of the $7.5 million received from VICIS. According to Kelley, because Petters's payment to VICIS constituted 15% of the overall amount received by VICIS and the bankruptcy estate did not have a claim to these funds, Kelley intended to allocate 15% of the funds received from VICIS to the receivership. Kelley indicated this allocation was part of the global resolution with VICIS. The unsecured creditors's committee

supported the settlement agreement and the allocation, but Ritchie, although supporting the settlement agreement, did not support the allocation and filed an objection.

The bankruptcy court held a hearing on the motion and heard argument from Kelley, VICIS, the unsecured creditors's committee, and Ritchie. At the conclusion of the hearing, the bankruptcy court overruled Ritchie's objection and approved the settlement agreement and the allocation of the funds, finding the allocation was reasonable because Kelley applied an objective mathematical calculation to divide the funds, the unsecured creditors's committee participated in the settlement process and approved of the allocation, and the circumstances in the case dealt with complex issues, unsettled law, and massively complicated factual disputes. The district court overseeing the receivership also approved the settlement agreement and the allocation.

Ritchie elected to appeal the bankruptcy court's order regarding the allocation to the district court pursuant to 28 U.S.C. § 158. The district court affirmed the allocation as reasonable, concluding the bankruptcy court properly followed the factors found in Lambert v. Flight Transportation Corp. (In re Flight Transportation Corp. Securities Litigation), 730 F.2d 1128, 1135 (8th Cir. 1984), Kelley as the trustee did not have a claim to the 15% paid by Petters, multiple assurances of trustworthiness supported the agreement although Kelley acted as the trustee and the receiver, and the allocation did not violate the coordination agreement. Ritchie appeals, arguing the bankruptcy court abused its discretion by approving the allocation.

II

"We sit as a second court of review in bankruptcy matters, applying the same standards of review as the district court . . . ." Velde v. Kirsch, 543 F.3d 469, 472

(8th Cir. 2008). "A bankruptcy court's approval of a settlement will not be set aside unless there is plain error or abuse of discretion." Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 654 (8th Cir. 2008) (internal quotation marks omitted). "The bankruptcy court abuses its discretion when its decision relies upon a clearly erroneous finding of fact or fails to apply the proper legal standard." Ritchie Special Credit Invs., Ltd, 620 F.3d at 853. A settlement, however, is not required to constitute "the best result obtainable"; instead, the standard for evaluation "is whether the settlement is fair and equitable and in the best interests of the estate." Tri-State Fin., LLC, 525 F.3d at 654 (internal quotation marks omitted). The court need only ensure "the settlement does not fall below the lowest point in the range of reasonableness." Id. In assessing the reasonableness of a settlement, the court considers: "'(A) the probability of success in the litigation; (B) the difficulties, if any to be encountered in the matter of collection; (C) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (D) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.'" Id. (alteration omitted) (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

Ritchie first challenges the bankruptcy court's approval of the allocation by contending the allocation was wholly gratuitous, providing nothing to PCI's creditors, and was without consideration. The settlement agreement, which contains an integration clause, makes no mention of the allocation and provides VICIS will pay $7.5 million to Kelley as the trustee without mentioning his position as the receiver. When considering that the settlement agreement was fully integrated, Ritchie maintains it was unreasonable for the bankruptcy court to approve the allocation.

Ritchie's argument, however, overlooks the posture of the settlement agreement before the bankruptcy court. Prior to the settlement agreement becoming enforceable, the bankruptcy court needed to approve the agreement. See Fed. R. Bankr. P. 9019(a). Consequently, the integration clause found in settlement

agreement was not yet enforceable while Kelley's motion for approval was pending before the bankruptcy court. The settlement was also contingent on approval by the district court overseeing the receivership. During the hearing on Kelley's motion before the bankruptcy court, the bankruptcy court considered the arguments presented by the parties involved in the mediation, including Kelley, VICIS, and the unsecured creditors's committee. Each of these parties indicated it considered the allocation as a part of the global resolution, which released claims held by and against VICIS for both the bankruptcy estate and the receivership. Without the allocation, according to the parties, settlement would not have occurred, resulting in PCI's creditors missing the opportunity to receive $6,375,000. Consequently, it was not an abuse of discretion for the bankruptcy court to consider the allocation and the settlement agreement as a single settlement. See Lurie v. Blackwell (In re Popkin & Stern), 196 F.3d 933, 938 (8th Cir. 1999) ("Several instruments constitute a single contract when they pertain to the same transaction and when the parties intend for them to be construed as such.").

Ritchie continues to maintain the district court's reasoning was flawed because even though Petters transferred some funds, the amount received by VICIS from PCI totaled over $15 million, which is more than double the payment being made by VICIS, meaning PCI could properly receive the entire $7.5 million from VICIS. Ritchie asserts the district court erred by assuming a portion of the funds paid by VICIS needed to be transferred to the receivership based on Petters's transfer of funds. Ritchie contends the receivership released any claims it had to the VICIS funds by executing the settlement agreement.

Ritchie's argument again overlooks that the settlement agreement was subject to approval by the bankruptcy court and the district court prior to it being enforceable. Further, as previously explained, the bankruptcy court did not err by considering the allocation as a part of the overall settlement between Kelley and VICIS, and a

bankruptcy court may approve a settlement even though it may not be "the best result obtainable." Tri-State Fin., LLC, 525 F.3d at 654 (internal quotation marks omitted).

Next, Ritchie argues the allocation is not in the best interests of PCI's creditors because Kelley was irredeemably conflicted by serving as both the trustee and the receiver. Ritchie alleges Kelley negotiated against himself by serving in dual capacities, representing adverse interests, and therefore called the fairness of the arrangement into question. In support of its argument, Ritchie cites York International Building, Inc. v. Chaney (In re York International Building, Inc.), 527 F.2d 1061, 1076 (9th Cir. 1975), In re Las Colinas, Inc., 426 F.2d 1005, 1014 (1st Cir. 1970), and Access Cardiosystems, Inc. v. Fincke (In re Access Cardiosystems, Inc.), 340 B.R. 127, 148 (Bankr. D. Mass. 2006). We disagree.

In Ritchie Special Credit Investments, Ltd., 620 F.3d at 853-54, we considered whether Kelley held an interest materially adverse to the bankruptcy estate because of his appointment as receiver. We determined the bankruptcy court did not abuse its discretion in concluding "Kelley's role and interests as a receiver do not predispose him towards forfeiture or amount to a disqualifying material adverse interest." Id. at 854. We also stated that holding an interest materially adverse to the interest of the bankruptcy estate generally applies "only to personal interests of the trustee, not those attributed to him in his representative or fiduciary capacity." Id. at 853. Ritchie has failed to present any evidence Kelley had or has since developed a personal interest adverse to the bankruptcy estate or that he is predisposed to favor the receivership. To the contrary, Kelley applied an objective mathematical formula to allocate the proceeds between the claims held by the receivership and the claims held by the bankruptcy estate.

Although Ritchie contends the receivership's claims against VICIS were speculative and not equal in strength to the bankruptcy estate's claims, the bankruptcy court considered the claims of both the receivership and the bankruptcy estate during

the hearing, finding the bankruptcy estate did not have a claim to the funds provided by Petters, and found it did not appear as though the statute of limitations had expired on the receivership's claims. The bankruptcy court was not required to conduct an extensive investigation of the claims in order to approve the settlement. See Martin v. Cox (In re Martin), 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997) ("[I]t is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement.").

Ritchie next maintains there was no trustworthiness in the process utilized to arrive at the allocation to protect creditors, and even if there was, it would not cure Kelley's conflict of interest. In support of its contention, Ritchie argues the allocation was not discussed during the mediation, which resulted in only the settlement agreement, and the unsecured creditors's committee's support of the agreement is unfounded.

First, as we previously considered, Ritchie has failed to present evidence demonstrating Kelley's dual appointments as the trustee and the receiver result in an interest materially adverse to the bankruptcy estate. Second, we find Ritchie's arguments regarding a lack of trustworthiness not persuasive. Ritchie did not participate in the mediation, and consequently, can only speculate as to what was discussed.

Additionally, the support of the unsecured creditors's committee is noteworthy. "Creditor Committees have the responsibility to protect the interest of the creditors; in essence, the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents." Loop Corp. v. U.S. Trustee, 379 F.3d 511, 519 (8th Cir. 2004) (internal quotation marks omitted). The committee participated in the mediation and indicated it supported the allocation because it is in

the best interests of the unsecured creditors for the bankruptcy estate to receive a substantial settlement in a very complex case which they may not otherwise receive.

Ritchie's next argument is the bankruptcy court erred because it did not have an adequate record before it to determine whether the allocation was fair and in the best interests of the creditors. "The sufficiency of a record underlying a decision to approve a settlement depends on the circumstances of each case." In re Petters Co. v. Kelley, 455 B.R. 166, 173-74 (B.A.P. 8th Cir. 2011). "The critical inquiry on appeal is not the quantum of evidence adduced at a hearing on a settlement, but rather whether a bankruptcy court apprises itself 'of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated[.]'" Id. (quoting Anderson, 390 U.S. at 424).

Contrary to Ritchie's assertion, there is no indication the bankruptcy court did not have the facts necessary to approve the settlement. Based upon the bankruptcy court's extensive involvement in Petters's cases, Kelley's verified motion, the settlement agreement, and the statements of Kelley, VICIS, and the unsecured creditors's committee, the bankruptcy court had the facts necessary to consider the four In re Flight Transportation Corp. Securities Litigation factors and approve the settlement. Specifically, the bankruptcy court explained the case involves "complex issues, unsettled law, and massively complicated factual disputes," and Ritchie's approach to the resolution of the claims "would entail a much larger infrastructure, much more procedure and much more costs for the resolution of disputes" and would "grind [the] process down to a much lower speed, make it much more expensive and potentially drag this on for longer than it will drag on." The bankruptcy court further recognized the claims held by VICIS against the receivership, finding they "were separate transfers on separate occasions from separately derived funds . . . and involve separate legal merits," and Kelley applied an objective mathematical formula according to these figures. The bankruptcy court also considered the $8 million offset claim VICIS held against the bankruptcy estate for the amount still outstanding on its

-10-

promissory notes, and as a part of settlement, VICIS released its rights to the claim. Accordingly, we find the bankruptcy court made an informed and independent judgment of the settlement agreement and the allocation and cannot say its decision "f[e]ll below the lowest point in the range of reasonableness." Tri-State Fin., LLC, 525 F.3d at 654 (internal quotation marks omitted).

Ritchie's final challenge to the allocation is that it runs counter to the coordination agreement which governs the relationship between the receivership and the bankruptcy estate. Specifically, Ritchie contends the allocation violates paragraph III.B.2 which provides any recovery based on parallel claims pursued by Kelley as the trustee and the receiver will inure to the benefit of the bankruptcy estate.[4] Ritchie maintains the claims held by PCI and the receivership against VICIS are parallel claims and the bankruptcy court's position with regard to parallel claims is untenable because the trustee and the receiver will never have overlapping claims to the same source bank account. Ritchie further argues it does not attempt to assert personal rights under the coordination agreement but seeks the protection of the coordination agreement for all of PCI's creditors.

Assuming for the purposes of our analysis that Ritchie has standing under the coordination agreement, when reviewing the coordination agreement *de novo*, see Anderson v. Hess Corp., 649 F.3d 891, 896 (8th Cir. 2011), we do not find Ritchie's argument persuasive. After considering the language contained in paragraph III.B.2, we interpret the term parallel claims to mean claims arising from the same operative facts or the same wrongful conduct. See Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 377-79 (Minn. 1990). Although the claims pursued by Kelley as the trustee and the receiver against VICIS are similar, they stem from separate wrongful conduct. The trustee's claims are derived from PCI's conduct, while the receiver's claims are

---

[4]The bankruptcy court determined the claims were not parallel claims because the sources of the funds which were used to make payments to VICIS were separate.

-11-

based upon Petters's conduct. Consequently, the claims are not parallel. Additionally, Ritchie's argument regarding the lack of a recovery from the same source bank account overlooks the broad language included in the coordination agreement which does not limit the variety of claims which the trustee and the receiver can bring. In other words, merely because the circumstances of this specific case did not result in parallel claims does not preclude parallel claims from existing under other circumstances.

## III

For the reasons provided, we affirm.

_____